# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1013

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the Southern |
| | * | District of Iowa. |
| Richard Antoine Evans, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: September 12, 2005
Filed: December 15, 2005

_____

Before MELLOY, BEAM, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Richard Antoine Evans of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The district court[1] sentenced him to 108 months in prison. Evans appeals his conviction, alternatively requests a new trial, and seeks resentencing. Jurisdiction being proper under 28 U.S.C. § 1291, this court affirms.

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

# I.

On December 28, 2003, two West Des Moines police officers saw Evans drive a white GMC Yukon into the parking lot of a concert venue. Recognizing Evans, the officers verified an outstanding warrant for his arrest. They arrested him as he exited the vehicle and then released three other unidentified male passengers.

The officers then searched the Yukon, which was registered to Evans's girlfriend, Dominique Gutierrez. The officers began with the glove box and, from the passenger side of the vehicle, noticed screws missing underneath where a radio or CD player ordinarily is in the front-center console. Finding it uncharacteristic to have missing screws in that area of the vehicle, one officer shook the plastic console cover with his hand, found it extremely loose, and pulled it out of the vehicle without unthreading any screws. Using a flashlight, he saw a small black gun case in the compartment behind where the plastic console cover had been. The gun case contained an unloaded pistol and two loaded magazines.

# II.

At the close of the government's case, Evans moved for a judgment of acquittal based on insufficient evidence, which the district court denied. On appeal, Evans reasserts that the government did not meet its burden of establishing he knowingly possessed the firearm.

Possession of a firearm may be actual or constructive. *United States v. Walker*, 393 F.3d 842, 846-47 (8th Cir. 2005), *cert. denied*, No. 05-6241, 2005 WL 2494161 (Oct. 11, 2005). Constructive possession requires that the defendant "has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself." *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004), *cert. denied*, 125 S. Ct. 1293 (2005). Constructive possession may be established by

circumstantial evidence alone, but the government must show a sufficient nexus between the defendant and the firearm. **United States v. Howard**, 413 F.3d 861, 864 (8th Cir. 2005).

In reviewing for sufficiency, this court views the evidence in the light most favorable to the government, resolving conflicts in its favor, and accepting all reasonable inferences that support the jury's verdict. **United States v. Collins**, 340 F.3d 672, 679 (8th Cir. 2003). Reversal is justified only if no reasonable jury could find the defendant guilty beyond a reasonable doubt. **United States v. Chapman**, 356 F.3d 843, 847 (8th Cir. 2004).

The government presented evidence that Evans had dominion over the interior of the Yukon where the firearm was found. Gutierrez, Evans's girlfriend, testified that she was the registered owner of the Yukon; Evans lived with her and drove the Yukon "on a regular basis" while she had another vehicle she drove. She stated she had no knowledge of the firearm or the loosened console area where it was found.

Evans also had a nexus to the firearm itself, which was registered to his half-brother, Marc Sockwell. Sockwell testified he inadvertently left the weapon in the vehicle's rear-cargo area during a trip from Illinois to visit Evans earlier in the week, and that Evans had control over the vehicle when Sockwell last saw the firearm. Sockwell also stated that the gun case had a small lock and key on it, which were both missing when the police found it. Like Gutierrez, Sockwell testified he did not place the gun case in the console area and did not know about the compartment.

## III.

This case is most like *United States v. Serrano-Lopez*, 366 F.3d 628 (8th Cir. 2004). In that case, the driver and passengers of a car were convicted by a jury of possession (with intent to distribute) cocaine that officers discovered in packages

hidden throughout the car. *Id.* at 632. The drugs were uncovered after an officer noticed fresh tool marks on the screws securing the dashboard and glove box of the automobile, indicating that the dash had been removed recently. *Id*. In upholding the convictions, this court was persuaded that signs of tampering supported an inference that the occupants knew contraband was hidden within the automobile. *Id.* at 635. *See also* **Ortega v. United States**, 270 F.3d 540, 546 (8th Cir. 2001).

Similarly, in *United States v. Willis*, this court found sufficient evidence to support the convictions of a driver and passenger for aiding and abetting possession of cocaine. 89 F.3d 1371, 1377 (8th Cir. 1996). There, the police uncovered crack cocaine in plastic bags sticking out of a hole in the wheel base within a station wagon's cargo area. *Id.* at 1375. Both defendants testified that they had no knowledge of the hidden cocaine. *Id.* at 1377. This court upheld the convictions of both the driver and passenger. *Id.* As to the driver, this court stated that "a person has constructive possession of contraband if he has . . . dominion over the premises in which the contraband is concealed." *Id.* (internal quotations omitted). Further, the scratch marks on the caps to the holes in the wheel base, along with a screwdriver, indicated that the driver knew about the hidden cocaine. *Id.* As to the passenger, this court was persuaded that his close physical proximity to the bags of crack cocaine and screwdriver in the back of the station wagon, as well as his friendship with the driver, was sufficient evidence to uphold his conviction. *Id.*

Like *Serrano-Lopez* and *Willis*, there was sufficient evidence to support Evans's conviction for illegally possessing the firearm. The modifications to the front-center console of the Yukon were readily visible to the investigating officer, who testified that he immediately noticed loose and missing screws in the plastic console cover. The console was located directly to the right of the driver's seat, easily accessible to the driver. As Evans was the Yukon's primary driver, and the owners of the vehicle and gun testified that they did not place the gun behind the front-center console cover,

a reasonable jury could conclude that Evans knew about the compartment that contained the firearm.

At oral argument, counsel discussed the case of *United States v. Mendoza-Larios*, 416 F.3d 872 (8th Cir. 2005). There, this court found insufficient evidence to convict the driver and passenger of possessing (with intent to distribute) cocaine locked in a sealed compartment welded within the passenger-airbag space of a vehicle, which was not visible. *Id.* at 873. The investigating officer testified that, from outward appearances, the dash looked like any other dash and that any discrepancies were not obvious to a member of the public. *Id.* at 876. In that case, the owners of the vehicle and the cocaine did not testify. This court was persuaded that the government failed to meet its burden of proving knowing possession.

The *Mendoza-Larios* case relies on *United States v. Pace*, 922 F.2d 451 (8th Cir. 1990) and *United States v. Fitz*, 317 F.3d 878 (8th Cir. 2003) in determining that the occupants of the car had no knowledge of the hidden cocaine. *See **Mendoza-Larios***, 416 F.3d at 875-76. In *Pace*, this court found insufficient evidence to convict the defendant of possessing (with intent to distribute) almost 200 pounds of cocaine hidden in several pieces of a co-defendant's luggage concealed in the back seat and cargo area of a station wagon. *Pace*, 922 F.2d at 453. In that case, both Pace and the co-defendant testified that Pace did not know that cocaine was hidden in the luggage. *Id.* Further, there was no evidence that Pace ever opened the luggage containing the cocaine or that he entered the back seat of the station wagon during the trip. *Id.* Similarly, in *Fitz*, this court found insufficient evidence to convict a defendant of conspiracy and possession (with intent to distribute) methamphetamine hidden in the gas tank of a vehicle. *Fitz*, 317 F.3d at 880. There, the government did not call any witnesses to establish that Fitz knew about the methamphetamine hidden in the gas tank. *Id.* at 882 (finding insufficient evidence that Fitz had ever ridden in or driven the vehicle in which the drugs were "well hidden").

*Mendoza-Larios*, *Pace*, and *Fitz* are inapposite here because they involve contraband that is hidden and not obvious. In this case, the modifications to the front-center console cover were obvious, not hidden, and in close proximity to the driver. Moreover, the jury believed the testimony of the owners of the vehicle and gun that they did not make the modifications to the console cover, and did not place the gun there. Accordingly, after a de novo review, this court finds sufficient evidence to support Evan's conviction for being a felon in possession of a firearm.

## IV.

In the alternative, Evans requests a new trial, objecting to the district court's *Allen* charge. A challenged jury instruction is reviewed for abuse of discretion. *United States v. Hagan*, 412 F.3d 887, 890 (8th Cir. 2005). An *Allen* charge is a supplemental jury instruction that advises deadlocked jurors to reconsider their positions. *Id.* Supplemental jury instructions are permissible so long as they are not coercive. *Id.* Jury coercion is determined by (1) the content of the instruction, (2) the length of the deliberation after the instruction, (3) the total length of deliberations, and (4) any indicia in the record of coercion. *Id.*

After about four hours of deliberation, the jury wrote the district court requesting options in the event of an impasse. The district court replied that the jury should notify the court in the event it was actually unable to reach a verdict. The jury immediately notified the district court that it was truly at an impasse. Over Evans's objection, the court issued an *Allen* charge in the form of Model Criminal Jury Instruction 10.02, and returned the jury to deliberations. Approximately 45 minutes later, the jury sent another note to the judge requesting an additional explanation of the word "knowingly" as used in the original instructions. Again, this instruction was given over Evans's objection. The jury then left, returning the next morning to deliberate for an additional four-and-a-half hours before returning a guilty verdict.

Based on the four-part test, the district court did not abuse its discretion. First, the content of Model Jury Instruction 10.02 is expressly approved by this court. *See United States v. Thomas*, 946 F.2d 73, 76 (8th Cir. 1991). Second, the jury deliberated for approximately five hours after the *Allen* charge was given, which raises no inference of coercion. *See United States v. Cortez*, 935 F.2d 135, 142 (8th Cir. 1991) (four-and-a-half hours of *Allen* deliberation time). Third, although the jury deliberated in total more than nine hours for a one-day, non-complex trial, "the total deliberation time is not dispositive in analyzing the effect of an *Allen* charge." *See United States v. Glauning*, 211 F.3d 1085, 1087 (8th Cir. 2000). Finally, the record contains no other indicia of coercion.

## V.

Evans also claims that a new trial is required due to the district court's erroneous supplemental definition of the term "knowingly." After the jury requested an explanation shortly after the *Allen* charge, the court responded in open court: "'Knowingly' as used in the instructions means that defendant knew he possessed the firearm. Possession has been fully defined for you in Instruction No. 11."

Evans attacks the supplemental definition in two basic ways. First, he argues that it was not consistent with the court's original instruction that knowledge alone is insufficient to support a conviction. To the contrary, the supplemental definition expressly referred to the original definition of "possession," which told the jury not to convict unless it found that Evans both knew the firearm was in the vehicle and intended to exercise control over it. Second, Evans says that the wording of the supplemental definition is prejudicial, linguistically confusing, circular, and conviction-oriented. This court finds no prejudice or confusion in the wording of the supplemental definition. Its language is a neutral, common-sense understanding of the term and was properly tied to the original instruction regarding "knowing possession" of the firearm. *See United States v. Iron Eyes*, 367 F.3d 781, 785 (8th

Cir. 2004) (noting that the definition of "knowingly" is a matter of common knowledge that requires no specific instruction). The district court did not abuse its discretion or unduly prejudice Evans in instructing on the supplemental definition.

## VI.

Finally, Evans appeals his sentence, claiming that the district court's mandatory application of the sentencing guidelines violated his Sixth Amendment rights and *United States v. Booker*, 125 S. Ct. 738 (2005). At sentencing, Evans argued *Blakely v. Washington*, 524 U.S. 296 (2004), thereby preserving this issue for harmless-error review. **United States v. Pirani**, 406 F.3d 543, 548-49 (8th Cir. 2005)(en banc), *cert. denied*, 126 S. Ct. 266 (2005). The government thus must establish beyond a reasonable doubt that the district court would not have imposed a lower sentence had it applied the guidelines in an advisory manner. **United States v. Sutherlin**, 424 F.3d 726, 728 (8th Cir. 2005).

Evans had two prior violent-felony convictions, making him a career offender under the sentencing guidelines. As a result, his sentencing guidelines range was 100 to 120 months. At sentencing, Evans urged the court to sentence him at the low end of that range, specifically requesting the sentence of 108 months that the court imposed. *See* **United States v. Harrison**, 393 F.3d 805, 807-08 (8th Cir. 2005). In choosing this sentence, the district court noted that Evans had the most criminal-history points of any defendant he had sentenced in 16 years of working with the guidelines. The court specifically rejected a lower sentence as a "disservice to society." On this record, any error from mandatory application of the guidelines was harmless.

## VII.

The judgment of the district court is affirmed.

_____