# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-1989

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal From the United States |
| v. | * | District Court for the |
| | * | Western District of Arkansas. |
| Ray Anthony Hollins, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: October 28, 2005
Filed: December 22, 2005

_____

Before MURPHY, HEANEY, and MELLOY, Circuit Judges.

_____

HEANEY, Circuit Judge.

Ray Anthony Hollins was charged with bank robbery, in violation of 18 U.S.C. § 2113(a) and (d). Hollins was found guilty after a jury trial, and was sentenced to 78 months' imprisonment. He argues on appeal that the trial court erred: (1) in denying his motion for acquittal; (2) in denying his motion for a mistrial on the basis that a government witness made references to Hollins's prior criminal activity by mentioning that she had observed his "mug shot"; and (3) in enhancing his offense level by two points because he made a death threat during the robbery, a fact the jury had not decided.

I. Background

On July 27, 2004, at approximately 12:15 p.m., a masked man wearing an orange hard hat and wielding a filet knife entered the Community Bank of Crossett in Crossett, Arkansas. The robber demanded that the tellers empty their cash drawers and place the money in a rolled-up brown paper sack. After collecting the money, the robber instructed the two tellers to lie on the floor behind the teller counter. He told them that he would send someone back inside in ten minutes, and if they called the police, he would kill them. The robber then left the bank on foot, taking $13,634.50 in cash with him. Immediately thereafter, one of the tellers called 911 to report the robbery.

Three witnesses–Kimberly Bankston and Gail Reed, the bank tellers, and Oliver Quint Couey II, the owner of a business located behind the bank–were interviewed by the police. Bankston was shown a picture of Hollins, his mug shot, before she identified him in a photographic line-up that showed only the mouth area of several black males. Reed identified Hollins from a photographic line-up that showed only the eyes of several black males. Couey stated that he had seen Hollins running behind the bank around the time the robbery occurred.

The Crossett police identified Hollins as a suspect in the case and arrested him several hours after the robbery. They were unable to locate the money, the knife, or the clothing associated with the robbery. Authorities also failed to uncover fingerprints. A bank video surveillance camera caught the robbery on tape, and the FBI performed an analysis of the video and bank lobby to determine the approximate height of the robber, which was consistent with Hollins's height. The government's case against Hollins was based primarily upon the eyewitness testimony of three witnesses who had been interviewed by the police.

-2-

A two-day jury trial was held, and Hollins was found guilty of one count of bank robbery by force or violence. At the sentencing hearing, Hollins was sentenced to 78 months of imprisonment, due in part to an increase in his offense level because he threatened death during the course of the robbery. Hollins appeals.

## II. Discussion

Hollins first argues that the trial court erred in denying his motion for an acquittal because no rational trier of fact could have found beyond a reasonable doubt that he was the person who robbed the bank. He asserts that no physical evidence linked him to the crime, with the exception of a boot that Hollins's wife gave to the police, and which appeared to be similar to a boot worn by the robber. The government failed to present the stolen money, the knife, the mask, or the hard hat. A fingerprint was recovered from the bank, but it did not match Hollins's print. Hollins also asserts that the witness's testimony was tainted by police conduct because investigating officers showed Bankston a picture of Hollins before she identified him in a photographic line-up. He also argues that the witnesses' testimony is unreliable because Reed did not notice that the robber was wearing an orange hard hat and Couey only saw the side and the back of the suspect's head.

Evidence is sufficient to sustain a conviction if, viewing the evidence in the light most favorable to the government, a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. United States v. Ryan, 227 F.3d 1058, 1063 (8th Cir. 2000). The jury verdict is reversed only if no reasonable jury could have made such a finding. United States v. Serrano-Lopez, 366 F.3d 628, 634 (8th Cir. 2004). We find there was sufficient evidence to sustain the conviction.

The suspect entered the bank wearing a mask with a hole cut in the center of the face, exposing his mouth, lips, nose, and eyes, permitting the tellers to observe his facial features and later identify him in a photo line-up. The robber wore a hard hat,

khaki pants, a dark shirt, and carried a brown paper grocery bag. He left the bank on foot, carrying the brown bag that contained the cash the tellers had placed in it; Couey observed a black male wearing khaki pants and carrying a brown paper bag running behind the bank, acting in an evasive manner. Couey recognized him as the same man who had requested employment at Couey's business the week prior to the robbery. Hollins's wife provided authorities with a boot that matched the description of the shoes worn by the robber. Additionally, investigators recovered a video surveillance tape containing footage of the robbery from the bank. An FBI analyst reviewed the tape to determine the approximate height of the robber and concluded that the robber was approximately the same height and build as that of Hollins. Finally, after Hollins's arrest, he attempted to provide an alibi for his location during the time of the robbery, but no one could substantiate his alibi. The totality of this circumstantial evidence supports the guilty verdict.

Next, Hollins asserts that the trial court erred in denying his motion for a mistrial based on Bankston's disclosure that she had observed a mug shot of Hollins prior to identifying him in a photographic line-up.[1] After Bankston's testimony, Hollins's counsel made an objection at a bench conference:

| | |
|---|---|
| Counsel: | We filed a motion in limine, Your Honor, to keep out all prior convictions and it was violated by that witness's statement that she observed the old mug shot of Mr. Hollins. I believe it is prejudicial to our defense because now we are forced to put him on and it was |

---

[1]During direct examination of the government's second witness, Kimberly Bankston, the government asked her if she had seen a photograph of Hollins prior to her identification of him in the photo line-up. She responded, "[w]ell, Dennis Roberts came up to me and showed me a mug shot of him. It was not a recent mug shot, it had been maybe a year ago." (Tr. at 73.)

-4-

|  | unresponsive to the question and we would move for a mistrial. |
|---|---|
| The Court: | I'm going to deny that. I don't know if they even picked it up, as such. I think it would be harmless, at best. |

(Tr. at 84.) Hollins asserts that the improper introduction of evidence of his past criminal record justifies his request for a new trial. He argues that the mention of an old mug shot of himself caused the jury to conclude that he had a prior criminal record and was predisposed to criminal activity, causing the jury to convict him. The government argues in response that the witness's remark about the mug shot was unresponsive to the question posed by the government's attorney. No reference was made to any prior convictions or arrests, nor were any questions related to Hollins's criminal history asked during the trial.

The standard of review of a denial of a motion for a mistrial is abuse of discretion. United States v. Flores, 73 F.3d 826, 831 (8th Cir. 1996). The prejudicial effect of any improper testimony is determined by examining the context of the error and the strength of the evidence of the defendant's guilt. United States v. Nelson, 984 F.2d 894, 897 (8th Cir. 1993). "The district court '[i]s in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record.'" Id. (citations omitted). In the face of the evidence presented against Hollins and the "wide array of testimony" against Hollins, we conclude that "one objectionable statement by a prosecution witness was not sufficient to create prejudicial error." United States v. Cole, 380 F.3d 422, 427 (8th Cir. 2004). We therefore hold that the district court did not err in refusing to grant a mistrial.

Finally, Hollins asserts that the trial court erred by adding two points to his guidelines offense level because he made a death threat during the course of the robbery, even though the jury had not made such a finding. The district court found

Hollins's total offense level to be 27, his criminal history category to be II, for a resulting guidelines range of 78 to 97 months. The court sentenced him to 78 months' imprisonment.

This court reviews de novo whether the district court correctly interpreted and applied the sentencing guidelines. United States v. Mashek, 406 F.3d 1012, 1016 (8th Cir. 2005). Our circuit has held that in the wake of Booker, district courts should continue to calculate the appropriate guidelines sentencing range, making their own findings of fact, but should then use the appropriate sentencing range in an advisory capacity only. United States v. Haack, 403 F.3d 997, 1002-03 (8th Cir. 2005). The district court noted that there was direct evidence that Hollins made a death threat to the tellers during the commission of the robbery. We find no error in this conclusion, and therefore affirm the district court's two-level enhancement of Hollins's offense level.

For the reasons cited above, we affirm the district court.

_____