# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-3305

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Plaintiff-Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Hillard Ledon Garrett, Jr., | * | |
| | * | |
| Defendant-Appellant. | * | |

_____

Submitted: May 13, 2011
Filed: August 4, 2011

_____

Before MURPHY and COLLOTON, Circuit Judges, and ERICKSON,[1] District Judge.

_____

ERICKSON, District Judge.

A jury convicted Hillard Ledon Garrett, Jr. of two counts of being a felon in possession of a firearm and ammunition in violation of 18 U.S.C. § 922(g)(1). Garrett appeals, arguing: (1) insufficient evidence supports the convictions; (2) the district

_____

[1]The Honorable Ralph R. Erickson, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

court[2] erred in denying his motion for a mistrial; and (3) the district court erred in denying his motion to sever the two counts. We affirm.

I.

On the morning of July 28, 2008, Officers Eric Moorman and Rodrigo Santizo stopped a silver Pontiac Grand Prix because the vehicle's windows were excessively tinted. The driver, Garrett, and the front seat passenger, Sara Rivero, were the sole occupants of the vehicle. Garrett provided Officer Moorman an Illinois identification card bearing the name "Hillard Garrett." The identification card was not a driver's license. After Officer Moorman requested that Garrett step out of the vehicle, Garrett led the officers on a high speed chase on I-235 through Des Moines, Iowa.

During the chase, Latonya Calderon witnessed a silver car with tinted windows weaving in and out of traffic. Calderon observed the silver car's window come down and an object travel out of the window. She watched the item hit the median area and then land in front of her car. Upon noticing that it was a gun, Calderon pulled over and called 911. Two other drivers also saw the gun, kicked it to the side of the interstate, and waited for police officers to arrive. The handgun, a 9mm Ruger, was loaded.

Officers eventually stopped the car and arrested Garrett. On August 20, 2008, a grand jury indicted Garrett for being a felon in possession of a firearm for conduct occurring on July 28, 2008. Garrett was not immediately arrested for this charge.

On September 17, 2009, officers executed a search warrant at 1846 E. Park Avenue in Des Moines, Iowa. They found Patricia Watson, Garrett's girlfriend,

---

[2]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

Watson's young child, and Garrett in the upstairs southwest bedroom. The owner of the home and her young child were found in the upstairs northwest bedroom. In a closet in the southwest bedroom, officers discovered a loaded .40 caliber Smith & Wesson handgun and a magazine with seven rounds. The gun, wrapped in a triple XL red shirt, had been placed in a small safe inside of a diaper bag. Officers also found Garrett's Illinois identification card, money, and a food stamp card in the bedroom. Garrett initially said the gun might belong to Watson, but after asking what would happen to Watson, Garrett admitted that the gun was his.

On October 21, 2009, the grand jury returned a superseding indictment adding a second count for the handgun found during the search of the Des Moines residence. Garrett moved to sever the counts, and the district court denied the motion.

The district court granted Garrett's motion in limine to preclude witnesses from testifying about drugs. During trial, Garrett twice moved for a mistrial, complaining that several witnesses referenced drugs or drug investigations. The district court denied the motions. Before and after the jury's guilty verdict, Garrett moved for judgment of acquittal. The district court denied the motions. The district court sentenced Garrett to 110 months' imprisonment on each count to be served concurrently. Garrett appeals his convictions.

## II. Sufficiency of the Evidence

Garrett first challenges the sufficiency of the evidence to support the jury's guilty verdict of both counts. We review a sufficiency of the evidence claim de novo, viewing the evidence in the light most favorable to the verdict and accepting all reasonable inferences supporting the verdict. *United States v. Chapman*, 356 F.3d 843, 847 (8th Cir. 2004). We will reverse the verdict only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt. *United States v. Evans*, 431 F.3d 342, 345 (8th Cir. 2005).

To convict Garrett under 18 U.S.C. § 922(g)(1), the government needed to prove: (1) Garrett had previously been convicted of a crime punishable by imprisonment of more than one year; (2) he knowingly possessed a firearm; and (3) the firearm had been in or affected interstate commerce. *See United States v. Bradley*, 473 F.3d 866, 867 (8th Cir. 2007). Garrett stipulated that he had previously been convicted of a felony and that both firearms had traveled in interstate commerce. At issue is whether he knowingly possessed both weapons.

To establish this element, the government could prove Garrett had actual or constructive possession of the firearm. *See Evans*, 431 F.3d at 345. "Constructive possession requires that the defendant 'has dominion over the premises where the firearm is located, or control, ownership, or dominion over the firearm itself.'" *Id.* (quoting *United States v. Maxwell*, 363 F.3d 815, 818 (8th Cir. 2004)). "Constructive possession may be established by circumstantial evidence alone, but the government must show a sufficient nexus between the defendant and the firearm." *Id.* (citing *United States v. Howard*, 413 F.3d 861, 864 (8th Cir. 2005)).

A.    Count One

Garrett argues the government failed to present sufficient evidence of a nexus between him and the firearm found on the highway. For support, he relies on the testimony of his passenger, Sara Rivero, who stated that she did not see a weapon in the car. Rivero also testified that although she kept her head down during the chase, she believed she would have felt Garrett throw a gun out the window.

While the jury could have believed Rivero's testimony, it was also entitled to disregard it. *See United States v. Jones*, 559 F.3d 831, 835 (8th Cir. 2009) (holding that it is within the jury's province to resolve conflicting testimony). In contrast to Rivero's testimony, Calderon testified that she saw a silver vehicle weaving in and out of traffic at a high rate of speed and observed a hand throw a gun out of the

-4-

window. Calderon and two other witnesses immediately pulled over and notified police that a handgun had just been discovered on the interstate. Officers Moorman and Santizo testified that they stopped Garrett's silver car for a minor traffic violation and that when they requested that he exit the vehicle, he led them on a high speed chase. The jury could infer from Garrett's actions of fleeing the scene of the traffic stop and the testimony about the gun that he unlawfully possessed the firearm and elected to discard it to avoid criminal penalties. *See United States v. Walker*, 393 F.3d 842, 846-47 (8th Cir. 2005) (holding that incriminating behavior during a routine traffic stop could support a jury's determination that the defendant possessed a firearm in the vehicle); *United States v. Bradley*, 473 F.3d 866, 867-68 (8th Cir. 2007) (holding sufficient evidence supported the jury's guilty verdict when the defendant repeatedly reached down and checked the area where the firearm was found and the defendant fled from police after the vehicle in which he was a passenger was stopped for a minor violation). Viewing the evidence in the light most favorable to the verdict, we conclude that sufficient evidence supported the jury's guilty verdict on count one.

## B. Count Two

Garrett argues the evidence at trial established that he was merely in the vicinity of the firearm found in the Des Moines, Iowa, residence searched on September 17, 2009. He claims no one testified that he was aware of the firearm's existence.

Contrary to Garrett's claim, a police officer assisting with the search of the home testified that Garrett admitted that the firearm was his. Moreover, police officers found Garrett and his Illinois identification card in the bedroom in which the firearm was located. Garrett and his girlfriend admitted that he stayed in that bedroom whenever he visited. This evidence established that Garrett had "dominion over the premises where the firearm [was] located." *See Evans*, 431 F.3d at 345. We

conclude the evidence presented by the government was sufficient to support the jury's verdict that Garrett knowingly possessed the gun found in the Des Moines, Iowa, residence.

## III. Motion for a Mistrial

Garrett argues the district court abused its discretion by denying his request for a mistrial when several witnesses mentioned drugs during the trial. Before trial, the district court ruled that witnesses should not discuss drug investigations. Although the prosecutor was supposed to inform all witnesses of the district court's ruling, Police Officer Robert Clark was injured immediately before trial and the prosecutor could not meet with him.

Officer Clark testified at trial that he had been "listening to police radio [and he] became aware of a vehicle pursuit that was happening inside the City of Des Moines involving narcotics officers. They were chasing a vehicle as part of a narcotics investigation." Garrett's attorney objected outside the presence of the jury, and the district court privately admonished Officer Clark not to discuss the narcotics investigation. Officer Clark did not mention drugs again.

The following day, Garrett moved for a mistrial. Garrett claimed that Officer Clark's reference to a narcotics investigation was unfairly prejudicial and it was unlikely the jury would not consider it in their deliberations. The district court denied the motion, reasoning that the brief mention of a drug investigation would not impact the jury's verdict.

On appeal, Garrett argues the trial was tainted by improper references to drugs, the manufacture of drugs, and drug investigations. Officer Clark and another police officer testified they had received narcotics training, one stated he was a narcotics investigator and the other discussed his role on the S.W.A.T. team. Watson, a witness

called by the government, also explained the reason child services was called during the execution of a search warrant was because drugs were found in the home. Lastly, Garrett takes issue with the criminalist's reference to a coffee grinder used for the manufacture of drugs in response to a question about when fingerprint powder is used to aid an investigation. [3]

"We will affirm a district court's ruling on a motion for a mistrial absent an abuse of discretion." *United States v. Fregoso*, 60 F.3d 1314, 1328 (8th Cir. 1995) (internal quotation and citation omitted). This is because "[t]he district court is in a far better position to measure the effect of an improper question on the jury than an appellate court which reviews only the cold record." *United States v. Nelson*, 984 F.2d 894, 897 (8th Cir. 1993) (internal quotations and citations omitted).

To determine whether improper testimony prejudicially affected the verdict, this court considers the context of the error and the strength of the evidence of the defendant's guilt. *United States v. Hollins*, 432 F.3d 809, 812 (8th Cir. 2005). Here, statements about "drugs" or "drug investigations" did not permeate the trial. Two officers testified about training they had received, and during their testimony, explained that they had received some training in drug investigations. Another government witness, a criminalist, testified generally about the techniques used to enhance the appearance of fingerprints. The criminalist stated that fingerprint powder is used when looking for fingerprints on coffee grinders, which are used in the

---

[3]Garrett did not object at trial to the officers' testimony regarding their narcotics training or the criminalist's reference to drug manufacturing. An objection made after the district had an opportunity to correct or avoid the mistake is reviewed for plain error. *United States v. West*, 612 F.3d 993, 996 (8th Cir. 2010). Because we find the district court did not abuse its discretion in denying the motion for a mistrial, Garrett cannot establish the first element of plain error. *Kirk*, 528 F.3d at 1109. The district court did not err, let alone plainly err, in denying Garrett's motion for a mistrial.

manufacture of drugs. Such testimony merely provided background about the witnesses' qualifications and the techniques they employed and was not specific to the investigation into Garrett's involvement in the use or sale of narcotics.

The only statement specific to Garrett was Officer Clark's comment that officers were chasing a vehicle as part of a narcotics investigation.[4] The government did not mention this comment during the opening statement or closing argument. *See United States v. Rounsavall*, 115 F.3d 561, 565 (8th Cir. 1997) (considering that the objectionable testimony was not exploited by the government). Moreover, it was an isolated comment from one witness in the midst of testimony from twelve other witnesses. *See id.* (considering that one witness made two objectionable comments, while the remaining 16 witnesses did not impermissibly testify); *Hollins*, 432 F.3d at 812 ("'[O]ne objectionable statement by a prosecution witness was not sufficient to create prejudicial error'" in light of the "'wide array of testimony'" against the defendant) (quoting *United States v. Cole*, 380 F.3d 422, 427 (8th Cir. 2004)). In light of the extensive testimony from the other witnesses, this objectionable statement by Officer Clark did not merit a mistrial.

---

[4]We note that one other comment about drugs was made during the trial. Garrett's attorney asked Watson why child services had been called after the officers searched the Des Moines, Iowa residence. She responded "since there were drugs found in the house, they had to make sure that the kids weren't affected by it." Although Garrett again moved for a mistrial, he admitted that he "asked for" the comment by inquiring of Watson why child services was called. The district court correctly reasoned that Garrett opened the door for this testimony, and therefore did not err in denying his motion for a mistrial based on this statement. *See United States v. Puckett*, 147 F.3d 765, 770 (8th Cir. 1998) (holding a mistrial was not warranted when defense counsel elicited the impermissible testimony through its questioning of a witness); *United States v. Muza*, 788 F.2d 1309, 1312 (8th Cir. 1986) (considering that the comments resulted from questioning by the defense attorney and were not the product of bad faith on the part of the government).

IV. Motion to Sever

Garrett argues the counts were improperly joined under Rule 8 because no commonality exists between the counts. In the alternative, Garrett contends the counts should have been severed under Rule 14 because he was prejudiced by the trial of both offenses in the same case.

A. Joinder

"The rules are to be liberally construed in favor of joinder." *United States v. Ruiz*, 412 F.3d 871, 886 (8th Cir. 2005). We review de novo the question of whether charges can be joined together. *United States v. Tyndall*, 263 F.3d 848, 849 (8th Cir. 2001). Under Rule 8, multiple counts can be charged in a single indictment as long as the offenses are (1) of the same or similar character; (2) based on the same act or transaction; or (3) constitute parts of a common scheme or plan. Fed. R. Crim. P. 8(a); *United States v. Kirk*, 528 F.3d 1102, 1107 (8th Cir. 2008). The government claims the charges were "of the same or similar character."

"In applying the 'same or similar character' standard, [this court has] found joinder of offenses to be proper when the two counts refer to the same type of offenses occurring over a relatively short period of time, and the evidence as to each count overlaps." *United States v. Robaina*, 39 F.3d 858, 861 (8th Cir. 1994) (citations and quotations omitted). Here, both of Garrett's counts were for the same crime: being a felon in possession of a firearm. The offenses, occurring approximately fifteen months apart, took place over a relatively short period of time. *See United States v. Lindsey*, 782 F.2d 116, 117 (8th Cir. 1986) (concluding that seventeen months between two felon in possession of a firearm offenses did "not violate the 'relatively short period of time'" requirement); *United States v. Rodgers*, 732 F.2d 625, 629 (8th Cir. 1984) (holding that twenty months between offenses constituted a short period of time under the facts of that case); *United States v.*

*Hastings*, 577 F.2d 38, 40 (8th Cir. 1978) (permitting joinder when two years separated the offenses). Finally, the evidence as to each count overlapped as the offenses were predicated on the same felony, and evidence of each offense would have been admissible under Rule 404(b) to prove the other in separate trials. Therefore, we conclude that the two counts were properly joined under Fed. R. Crim. P. 8(a).

B.    Severance

Even if charges are properly joined under Rule 8, a district court may exercise its discretion and sever the charges if the defendant will be prejudiced by the joinder of the two charges. *Tyndall*, 263 F.3d at 850.[5] "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal, a chance that [the defendant] would have had in a severed trial." *United States v. Koskela*, 86 F.3d 122, 126 (8th Cir. 1996). "[T]here is a strong presumption against severing properly joined counts." *United States v. McCarther*, 596 F.3d 438, 442 (8th Cir. 2010). The defendant bears the burden of establishing prejudice. *United States v. Humphreys*, 982 F.2d 254, 259 (8th Cir. 1992).

_____

[5]We acknowledge what appears to be a split in authority on the appropriate standard of review when a defendant moves to sever the counts during a pretrial hearing, but fails to renew the motion at the close of the government's case in chief or at the close of the evidence. *Compare United States v. Flores*, 362 F.3d 1030, 1039 (8th Cir. 2004) (reviewing a motion to sever under an abuse of discretion standard), *with United States v. Mathison*, 157 F.3d 541, 546 (8th Cir. 1998) (reviewing the denial of a motion to sever for plain error when the defendants did not move to renew their motions at the close of the government's case); *see also United States v. Carter*, 481 F.3d 601, 606 n.3 (8th Cir. 2007) (acknowledging that "the standard of review applicable to the denial of a severance motion has been a subject of debate."). Reviewing for either plain error or for an abuse of discretion, the outcome in this case remains the same. *See Carter*, 481 F.3d at 606 n.3.

Garrett has not shown prejudice. We presume Garrett is claiming he was prejudiced by the jury using evidence from one of the counts when deliberating on the other count, or that the jury may have cumulated the evidence. But prejudice does not result if evidence of one charge would have been admissible in the trial of the other. *United States v. Taken Alive*, 513 F.3d 899, 903 (8th Cir. 2008). Here, evidence that Garrett unlawfully possessed a firearm on one occasion was admissible to prove he knowingly possessed a firearm on another occasion. *See United States v. Walker*, 470 F.3d 1271, 1274 (8th Cir. 2006) ("Evidence that a defendant possessed a firearm on a previous occasion is relevant to show knowledge and intent."); *Taken Alive*, 513 F.3d at 903 (concluding severance of two charges, for assaults that occurred approximately one month apart, was not required because evidence of one assault could be used to show the "absence of mistake or accident or to show intent" of the other assault). Because Garrett failed to establish prejudice, the district court properly denied his motion to sever.

V.

We conclude sufficient evidence supports the convictions, the district court did not err in denying the motion for a mistrial, and the district court did not err in declining to sever the two counts. Accordingly, we affirm the judgment of the district court.

_____