# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2643

_____

United States of America

*Plaintiff - Appellee*

v.

Edward Jefferson, also known as Black Walt

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 12, 2013
Filed: August 5, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

In October 2009, Edward Jefferson pleaded guilty to a charge that he possessed cocaine with intent to distribute in February 2008. In February 2010, Jefferson and four others were charged with conspiring to distribute five kilograms or more of cocaine between January 1, 2007, and the date of the indictment; Jefferson was also charged with using a communication facility to facilitate the distribution of the

cocaine. <u>See</u> 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 843(b) and (d), and 846. When he failed to appear on the new charges, the district court granted a government motion to delay sentencing in the earlier case. Following a four-day trial in June 2011, a jury convicted Jefferson of the conspiracy and communication offenses. At a hearing held to determine and impose sentences for both convictions, the district court[1] overruled Jefferson's objection to the Probation Officer's drug quantity calculation, resulting in an advisory guidelines range of 292 to 365 months in prison. The court sentenced Jefferson to 240 months on the conviction for possession with intent to distribute, the statutory maximum, 240 months for the cocaine conspiracy offense, and 48 months on the communication offense, all to be served concurrently. Jefferson appeals the convictions and sentences. His counsel's brief argued numerous issues. Jefferson raised additional issues in a lengthy *pro se* supplemental brief. We affirm.

## I. Sufficiency of the Evidence and Sentencing Issues

At trial, the government's primary witness was Alejandro Corredor, the conspiracy's organizer and leader who testified pursuant to a plea agreement. Corredor testified that, in 2007, he was supplied ten to twenty-five kilograms of cocaine every two weeks and typically distributed five kilograms to Jefferson. In 2008, a new supplier provided Corredor twenty-five to forty kilograms of cocaine twice a month until the supplier's arrest in October. Corredor continued distributing "four to five" kilograms to Jefferson from each shipment. After October 2008, Corredor received three shipments of approximately forty-five kilograms of cocaine directly from a supplier in Mexico. Again, Corredor distributed "four to five" kilograms of each shipment to Jefferson. The government also introduced thirty-three recorded phone calls between Corredor and Jefferson. Corredor identified Jefferson as the speaker and testified that the calls were about cocaine transactions, explaining

---

[1] The Honorable Nanette Laughrey, United States District Judge for the Western District of Missouri.

the use of code words and phrases that referred to drugs and nicknames that referred to Jefferson, his co-defendants, and other distributors.

The jury credited Corredor's testimony and convicted Jefferson of the conspiracy and communication offenses. Sentencing was conducted by the district judge who presided when Corredor testified at this trial and at an earlier trial in which others were convicted of conspiring to distribute cocaine for Corredor.[2] The court expressly credited Corredor's trial testimony and earlier proffers in finding Jefferson personally responsible[3] for distributing 150 kilograms or more of cocaine, resulting in a base offense level of 38, see U.S.S.G. § 2D1.1(c)(1), and an advisory range of 292-365 months. The court then imposed concurrent sentences of 240 months in prison for the cocaine possession offense and the conspiracy offense. What Jefferson and his attorney fail to acknowledge in raising a host of challenges to the conspiracy conviction on appeal is a basic reality -- if the evidence at sentencing, including Corredor's trial testimony, was sufficient to find that Jefferson personally distributed at least 50 kilograms of cocaine, his 240-month sentence was within the advisory guidelines range for the possession offense, to which he pleaded guilty, and the conspiracy conviction becomes of little or no significance to the total punishment imposed. Thus, we first take up this essential credibility issue.

Jefferson argues that the evidence at trial was insufficient to support his cocaine conspiracy conviction because the government failed to prove that he knew of and intentionally joined a conspiracy with Corredor to distribute more than five

---

[2]See United States v. Adrian L. Dunn, No. 11-3255 (8th Cir. July 22, 2013).

[3]The court commented: "I heard what kind of conspiracy this was, and I heard how this defendant was involved in it. . . . He's being given an enormous break here in terms of holding him only responsible for that part of it that can be specifically attributed to him."

kilograms of cocaine. See United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011) (elements of a conspiracy offense), cert. denied, 132 S. Ct. 1583 (2012). He further argues that the district court procedurally erred in determining drug quantity at sentencing by relying on the unreliable testimony of Corredor in overruling Jefferson's objection to the Probation Officer's testimony that Jefferson was responsible for distributing at least 154 kilograms of cocaine. We review the sufficiency of the evidence de novo, viewing the evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Miller, 698 F.3d 699, 702 (8th Cir. 2012), cert. denied, 133 S. Ct. 1296 (2013). We review the district court's drug quantity determination for clear error. United States v. Rodriguez, 711 F.3d 928, 938 (8th Cir. 2013).

Jefferson argues that only Corredor's testimony supports his conviction because the government presented no other evidence that Jefferson sold more than five kilograms of cocaine or participated in a conspiracy to distribute cocaine for Corredor. He urges us not to believe Corredor's testimony because of inconsistencies regarding the quantity of cocaine in his testimony; Corredor's checkered past; his admission that he lied to law enforcement in the past; his incentive to lie in the hope that he would receive a lesser sentence; and inconsistencies in the testimony of Corredor and his wife, Cindi Corredor, who testified that she observed about five drug or money transactions between Jefferson and her husband while Jefferson lived in one of her husband's residences.

"We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Coleman, 525 F.3d 665, 666 (8th Cir.), cert denied, 555 U.S. 958 (2008). The jury's "conclusions on these issues are virtually unreviewable on appeal." United States v. Thompson, 560 F.3d 745, 749 (8th Cir.) (quotation omitted), cert. denied,

558 U.S. 923 (2009). Corredor's testimony directly supported the jury's verdict. Inconsistencies, potential bias, and Corredor's incentive to lie were well developed on cross-examination but rejected by the jury. We have no difficulty concluding the evidence was sufficient for a reasonable jury to find Jefferson guilty of conspiring to distribute at least five kilograms of cocaine. Corredor's testimony identifying Jefferson as the other party on recorded calls discussing cocaine transactions, together with testimony by law enforcement agents regarding the wiretap and their investigation, were sufficient evidence to support the conviction for using a communication facility to facilitate cocaine distribution.

Turning to the issue of drug quantity, Probation Officer Leigh Anne Wentworth, who prepared the Presentence Investigation Report (PSR), testified at the contested sentencing hearing. Based on her additional analysis of Corredor's trial testimony and earlier proffers, she reduced her estimate of the amount of cocaine distributed to Jefferson during the conspiracy period alleged in the indictment from 294 kilograms to 154 kilograms. After cross-examination and argument, the district court overruled Jefferson's objection to this amended drug quantity: "I largely believe the testimony of Alejandro Corredor. I heard him. He was quite detailed in some places of his testimony in terms of what he remembered. It is also consistent with other things that other people testified about." We overturn a finding of drug quantity "only if the entire record definitively and firmly convinces us that a mistake has been made." United States v. Quintana, 340 F.3d 700, 702 (8th Cir. 2003). Here, Jefferson's attack on Corredor's testimony is without merit; "in sentencing matters a district court's assessment of witness credibility is quintessentially a judgment call and virtually unassailable on appeal." Rodriguez, 711 F.3d at 938. There was no clear error in finding Jefferson responsible for more than 150 kilograms of cocaine.

Jefferson also argues that his sentence was substantively unreasonable because the district court completely discounted testimony at sentencing regarding Jefferson's character, his commitment to the community, and his positive impact on individuals

in the community. We disagree. The district court expressly considered this evidence in granting a substantial downward variance. "In such cases it is nearly inconceivable that the court abused its discretion in not varying downward still further." United States v. Chaika, 695 F.3d 741, 746-47 (8th Cir. 2012). The district court did not abuse its substantial sentencing discretion. The sentence of 240 months in prison, the statutory maximum for the possession offense, must be affirmed.

## II. Other Challenges to the Conspiracy Conviction.

A. Composition of the Jury Panel. Jefferson argues the district court erred in failing to dismiss the jury panel prior to and at the end of *voir dire* because it contained only one black juror and few young people and therefore denied Jefferson a jury of peers who would understand the dynamics of the youth-oriented rap music culture. The Sixth Amendment guarantees all those accused of a crime the right to be tried by an impartial jury drawn from a fair cross-section of the community. Taylor v. Louisiana, 419 U.S. 522, 527 (1975). "The Constitution does not guarantee a defendant a proportionate number of his racial group on the jury panel or the jury which tries him; it merely prohibits deliberate exclusion of an identifiable racial group from the juror selection process." United States v. Jones, 687 F.2d 1265, 1269 (8th Cir. 1982) (quotation omitted). Therefore, to establish a violation of the Sixth Amendment's fair-cross-section requirement, Jefferson must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this under-representation is due to systematic exclusion of the group in the jury-selection process.

United States v. Sanchez, 156 F.3d 875, 879 (8th Cir. 1998), quoting Duren v. Missouri, 439 U.S. 357, 364 (1979).

After Jefferson renewed his objection to the final panel, the district court noted: "absent some evidence that there is a defect in the manner in which the selection process occurs, there is not a cross-sectional challenge that can be sustained." When Jefferson then conceded he had no evidence the jury panel was not chosen from a fair and impartial cross-section of the community, the court overruled his objection. This ruling was consistent with well-settled law. See Jones, 687 F.2d at 1269-70; United States v. Tripp, 370 Fed. App'x 753, 759-60 (8th Cir. 2010) (unpublished).

B. Constructive Amendment and Variance. Jefferson argues the district court erred when it allowed the government to introduce testimony by Corredor regarding drug sales in 2001 and 2003, evidence outside the alleged conspiracy period that constituted a constructive amendment of the indictment or a material variance in the proof. As there was no objection to this evidence at trial, our review is for plain error.

"[A] constructive amendment changes the charge, while the evidence remains the same; a variance changes the evidence, while the charge remains the same." United States v. Stuckey, 220 F.3d 976, 981 (8th Cir. 2000). An indictment is constructively amended only by "the admission of evidence that proves the essential elements of an uncharged offense." United States v. Novak, 217 F.3d 566, 575 (8th Cir.), cert. denied, 531 U.S. 1043 (2000). Here, the government's evidence, including Corredor's testimony, focused almost exclusively on the period alleged in the indictment, and there is no claim the district court's instructions changed the elements of the conspiracy charged. The claim of constructive amendment is without merit. See United States v. Begnaud, 783 F.2d 144, 147-48 (8th Cir. 1986).

A "variance between the indictment and the proof at trial requires reversal of a conviction only if the variance actually prejudiced the defendant." Novak, 217 F.3d at 574. Corredor's passing reference to first meeting Jefferson and selling him drugs in 2001 might have warranted a cautionary instruction, such as the one given in United States v. Johnston, 353 F.3d 617, 623 (8th Cir. 2003), cert. denied, 541 U.S.

1068 (2004), but none was requested. This testimony was too inconsequential to constitute a variance, much less a material and prejudicial variance, between the conspiracy charged in the indictment and the government's proof. The district court did not commit plain error in "allowing" this testimony, to which no defendant objected.

C. A Rule 404(b) Issue. A traffic stop of a vehicle driven by Jefferson in February 2008 led to the discovery of more than 400 grams of cocaine and drug paraphernalia; he pleaded guilty to possession with intent to distribute cocaine prior to the trial of the conspiracy charges. Prior to trial, the government gave notice it intended to offer this evidence pursuant to Rule 404(b) of the Federal Rules of Evidence. Jefferson objected. The district court noted that the incident occurred during the charged conspiracy period and thus the conduct was relevant to the alleged conspiracy. The court also ruled that it would admit the prior conviction under Rule 404(b) and invited defense counsel to request a limiting instruction.

At trial, Officer Brock Nelson testified to the facts surrounding the traffic stop, and the government introduced exhibits relating to the contraband seized. Not until cross examination was Nelson asked to disclose that Jefferson had pleaded guilty to charges arising from the traffic stop, an admission that Jefferson repeated on direct examination when he testified in his own defense. On appeal, Jefferson argues that his prior conviction was impermissible "propensity" evidence that should not have been admitted under Rule 404(b). This contention is without merit. The evidence of cocaine distribution seized during the traffic stop was obviously relevant to the conspiracy alleged in the indictment. As Jefferson himself put into evidence the ensuing plea of guilty and conviction, a challenge to the district court's tentative pretrial ruling was not properly preserved. Moreover, that ruling was clearly within the substantial discretion district courts are afforded in making Rule 404(b) decisions. See, e.g., United States v. Vieth, 397 F.3d 615, 618 (8th Cir.), cert. denied, 545 U.S. 1110 (2005). "[A] prior conviction for distributing drugs, and even the possession

of user-quantities of a controlled substance, are relevant under Rule 404(b) to show knowledge and intent to commit a current charge of conspiracy to distribute drugs." United States v. Robinson, 639 F.3d 489, 494 (8th Cir. 2011).

D. Response to an Inquiry During Jury Deliberations. During its deliberations, the jury requested transcripts of the calls between Jefferson and Corredor. Because the transcripts were not in evidence, the district court proposed to allow the jurors to hear the recordings of seven recorded calls referenced by counsel in closing arguments. In response to an inquiry by the court, Jefferson did not object. But he now argues on appeal the court committed plain error when it played tapes of only a few of the recorded calls requested by the jury because that over-emphasized those calls and robbed them of their context. "It is within the sound discretion of the trial court to determine whether to allow a jury to review properly admitted testimony or recordings during deliberations." United States v. Muhlenbruch, 634 F.3d 987, 1001-02 (8th Cir.), cert. denied, 132 S. Ct. 228 (2011). That discretion includes whether replaying a recorded conversation would unduly emphasize the evidence. See United States v. Koessel, 706 F.2d 271, 275 (8th Cir. 1983); United States v. Williams, 548 F.2d 228, 232 (8th Cir. 1977). This issue appears to have been affirmatively waived. In any event, there was no abuse of discretion, much less plain error.

E. The *Allen* Charge. After several hours of deliberations, the jury sent the judge a note: "We have agreed on four of the five counts. We have finished with two of three defendants and one of the two counts on the remaining defendant. There is one juror with a differing opinion and it is a volatile and hostile situation." In response, without objection, the district court gave the jury an "Allen charge," which is "a supplemental jury instruction that advises deadlocked jurors to reconsider their positions." United States v. Evans, 431 F.3d 342, 347 (8th Cir. 2005). Some thirty minutes later, the jury asked to hear the calls between Corredor and defendant Villa. Nearly an hour later, well into the evening, the court brought the jury in and explained, again without objection, "You can return a verdict on the counts and the

defendants on which you do have an agreement, and you can just notify the court that you're unable to agree on all." A few minutes later, the jury asked if the entire case would have to be retried if they returned a verdict on four of the five charges. Counsel agreed the court should simply write "no" on the jury's note and return it. Less than five minutes later, the jury returned its verdict, finding each defendant guilty of all charges except for one of the two counts against defendant Villa.

On appeal, Jefferson argues the district court committed plain error by prematurely giving the <u>Allen</u> charge. Again, this issue appears to have been affirmatively waived because all defendants explicitly agreed to the court's handling of the jury notes in question. In any event, there was no abuse of discretion, much less plain error. <u>See</u> <u>Evans</u>, 431 F.3d at 347 (standard of review). Neither the total length of the jury's deliberations -- approximately eight hours -- nor the time it took the jury to reach a verdict after the <u>Allen</u> charge -- approximately two-and-a-half hours -- suggests that the supplemental charge had an impermissible coercive effect. <u>See</u> <u>United States v. Johnson</u>, 411 F.3d 928, 930-31 (8th Cir.), <u>cert. denied</u>, 546 U.S. 971 (2005); <u>United States v. Johnson</u>, 114 F.3d 808, 815 (8th Cir. 1997).

## III. Additional Issues Raised *Pro Se*

In addition to rearguing the issues raised in his attorney's brief, discussed in Parts I and II of this opinion, Jefferson raised the following issues in his *pro se* supplemental brief: (1) error in admitting references to Corredor's out-of-court proffer statements by agent King; (2) the unjust indictment was improperly based on Corredor's proffer; (3) and (4) Corredor committed perjury at trial and there was prosecutor misconduct in offering that perjured testimony; (5) the prosecution violated <u>Brady v. Maryland</u> by withholding Corredor's exculpatory immigration records; (6) admitting alien Corredor's testimony violated Jefferson's right to due process; (7) error in admitting amended transcripts of wiretap-recorded calls that were prepared by the government (the transcripts were not admitted, <u>see</u> Part II.D.); (8)

imposing a sentence that was grossly disproportionate to the sentences imposed on others convicted in two separate trials of conspiring with Corredor to distribute cocaine. We have carefully considered these contentions and conclude that each is without merit. As these issues have been considered and rejected on the merits in this direct appeal, they may not be raised in a motion for post-conviction relief under 28 U.S.C. § 2255 or § 2241.

The judgment of the district court is affirmed.

_____