# United States Court of Appeals
## For the Eighth Circuit

_____

No. 13-3253

_____

United States of America

*Plaintiff - Appellee*

v.

Fred W. Robinson

*Defendant - Appellant*

------------------------------

American Civil Liberties Union; American Civil Liberties Union of Missouri

*Amici on Behalf of Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: December 11, 2014
Filed: March 25, 2015

_____

Before WOLLMAN, COLLOTON, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Fred W. Robinson of wire fraud and federal program theft. The district court[1] sentenced him to 24 months' imprisonment. Robinson appeals. Having jurisdiction under 28 U.S.C. § 1291, this court affirms.

I.

In 2006, Robinson opened Paideia Academy, a non-profit charter school in St. Louis. The chair of Paideia's board, Robinson was often on-site, overseeing operations. State and federal education monies—disbursed through the Missouri Department of Elementary and Secondary Education (DESE)—exclusively funded the school. The funds were restricted to operating kindergarten through eighth grade. In 2009 and 2010, Robinson directed $242,533 from Paideia to develop a pre-kindergarten child care center.

Robinson was also employed, beginning in 1990, in the Parking Division of the St. Louis Treasurer's Office. He purported to inspect parking meters. On his weekly timesheets, he always recorded 40 hours, regardless of holidays, and even after parking meter services were outsourced in June 2009. He never took vacation or sick days. In late 2009, the FBI investigated his "employment." Agents interviewed four former Parking Division employees, including one who did not recognize a picture of Robinson and another who never saw Robinson working. In December 2009 and January 2010, agents conducted periodic surveillance on Robinson's car, which they observed at his home, a diner, and Paideia. At that time, the agents reasonably suspected that Robinson did not inspect parking meters. On January 22, 2010, agents installed, without a warrant, a GPS device on his car while parked on a public street. The device recorded data until agents removed it on March 17. At all times, the car

---

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri.

was in a location open to public view. The tracking confirmed that Robinson did not inspect parking meters.

In a single indictment, the government charged Robinson with one Paideia-related count of wire fraud, in violation of 18 U.S.C. §§ 1343 and 2 (*count 1*); two Paideia-related counts of federal program theft, in violation of 18 U.S.C. § 666(a)(1)(A) (*counts 2 and 3*); and five parking-related counts of federal program theft, in violation of 18 U.S.C. §§ 666(a)(1)(A) and 2 (*counts 4-8*). Before trial, the district court denied Robinson's motion to suppress the GPS evidence, motion to sever counts 1-3 from counts 4-8, and objection to the jury's composition under *Batson v. Kentucky*, 476 U.S. 79 (1986). At trial, the court rejected his challenges to certain testimony and parking-related jury instructions. The jury found him guilty on all counts. The court sentenced him to 24 months' imprisonment and awarded $419,333 in restitution, including $242,533 to DESE.

On appeal, Robinson challenges the: (A) admission of GPS evidence, (B) joinder of counts 1-3 with counts 4-8, (C) *Batson* denial, (D) jury instruction rulings, (E) evidentiary sufficiency of counts 4-8, (F) admission of certain testimony, (G) sentence, and (H) restitution award to DESE.

II.

A.

Robinson moved to suppress the GPS evidence, invoking the Supreme Court's 2012 decision that the "Government's installation of a GPS device on a target's vehicle, and its use of that device to monitor the vehicle's movements, constitutes" a Fourth Amendment "search." **United States v. Jones**, 132 S. Ct. 945, 949, 954 (2012) (internal quotation marks omitted) (noting Court had "no occasion" to consider whether search would be lawful based on reasonable suspicion). The district

court denied the motion.  This court reviews factual findings for clear error and legal conclusions de novo.  *United States v. Anderson*, 688 F.3d 339, 343 (8th Cir. 2012).  This court affirms the denial "unless it is unsupported by substantial evidence, based on an erroneous interpretation of applicable law, or, based on the entire record, it is clear a mistake was made."  *United States v. Goodale*, 738 F.3d 917, 921 (8th Cir. 2013).  This court may affirm the denial "on any ground the record supports."  *Anderson*, 688 F.3d at 343.

"The Fourth Amendment protects against unreasonable searches, that is, searches that are neither authorized by a warrant nor within one of the specific exceptions to the warrant requirement."  *United States v. Barraza-Maldonado*, 732 F.3d 865, 867 (8th Cir. 2013).  A Fourth Amendment violation "usually triggers exclusion of evidence 'obtained by way of' the violation."  *Id.*, *quoting Davis v. United States*, 131 S. Ct. 2419, 2423 (2011).  But evidence is not excluded "when the police conduct a search in objectively reasonable reliance on binding appellate precedent."  *Davis*, 131 S. Ct. at 2426, 2429, 2434 (explaining "sole purpose" of exclusionary rule "is to deter future Fourth Amendment violations" and "[a]bout all that exclusion would deter in [such a] case is conscientious police work").  Thus, even if a warrantless GPS search is unconstitutional, the evidence is admissible if the agents acted in objectively reasonable reliance on binding appellate precedent.

As of March 2010, this court's last word on electronic tracking devices was in 1983.  *See United States v. Bentley*, 706 F.2d 1498, 1505 (8th Cir. 1983) (probable cause existed for attaching electronic tracking device to a machine bought by defendant).  *See also United States v. Frazier*, 538 F.2d 1322, 1324 (8th Cir. 1976) (holding attachment of tracking device to target's car was "actual trespass" but reversing suppression of evidence obtained from device because search was justified by probable cause).  The Supreme Court allowed such devices in *United States v. Knotts*, 460 U.S. 276 (1983), and *United States v. Karo*, 468 U.S. 705 (1984).  In *Knotts*, the Court found no Fourth Amendment violation in monitoring a car with a

-4-

tracking beeper when the "surveillance conducted by means of the beeper . . . amounted principally to" following the car on public streets. *Knotts*, 460 U.S. at 281, 285 ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."). In *Karo*, the Court upheld the installation of a beeper inside a can transferred to the target. *Karo*, 468 U.S. at 712, 713 ("The mere transfer to Karo of a can containing an unmonitored beeper infringed no privacy interest. . . . To be sure, it created a potential for an invasion of privacy, but we have never held that potential, as opposed to actual, invasions of privacy constitute searches for purposes of the Fourth Amendment."). But, when the can entered a private residence, monitoring "violate[d] the Fourth Amendment rights of those who have a justifiable interest in the privacy of the residence," as it is "not open to visual surveillance." *Id.* at 714.

The agents "could reasonably rely" on *Knotts* and *Karo* as "binding appellate precedent."[2] *See United States v. Aguiar*, 737 F.3d 251, 261 (2d Cir. 2013) (applying *Knotts* and *Karo* in absence of circuit law), *cert. denied*, 135 S. Ct. 400 (2014). *See also United States v. Katzin*, 769 F.3d 163, 173 (3d Cir. 2014) (en banc) (same), *cert. denied*, 2015 WL 732186 (2015). Robinson and amicus, the American Civil Liberties Union, argue that law enforcement must rely on binding *circuit* precedent. But "it is self-evident that Supreme Court decisions are binding precedent in every circuit." *Katzin*, 769 F.3d at 173. *See also United States v. Mosley*, 505 F.3d 804, 811 (8th Cir. 2007) ("The decisions of the Supreme Court 'remain binding precedent until [the

---

[2]This court first applied the tracking portions of *Knotts* and *Karo* in May 2010—*after* the installation and monitoring here. *See United States v. Marquez*, 605 F.3d 604, 610 (8th Cir. 2010) (holding that "when police have reasonable suspicion that a particular vehicle is transporting drugs, a warrant is not required when, while the vehicle is parked in a public place, they install a non-invasive GPS tracking device on it for a reasonable period of time").

Court] see[s] fit to reconsider them . . . .'" (alterations in original)), *quoting **Hohn v. United States***, 524 U.S. 236, 252-53 (1998).[3]

The GPS evidence was properly admitted under *Knotts* and *Karo*. Under *Karo*, it was objectively reasonable for the agents to conclude their warrantless installation of the device on Robinson's car was constitutional. *See **Karo***, 468 U.S. at 713 (finding constitutional the installation of beeper inside can transferred to target). *See also **Katzin***, 769 F.3d at 175 ("The magnetic attachment of an unmonitored GPS unit onto the exterior of [defendant's] vehicle, like the mere transfer of a can containing an unmonitored beeper, did not convey any information."); ***Aguiar***, 737 F.3d at 261 ("[L]aw enforcement could reasonably conclude placing a GPS device on the exterior of Aguiar's vehicles did not violate the Fourth Amendment.").

During the two months of monitoring, Robinson's car was always in public view, and "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." *See **Knotts***, 460 U.S. at 281. The technology "allows law enforcement to conduct the same sort of surveillance it could conduct visually, but in a more efficient and cost-effective manner." ***Aguiar***, 737 F.3d at 262 (rejecting argument that GPS surveillance "continued over a period of months"). *See also **United States v. Brown***, 744 F.3d 474, 477 (7th Cir.) ("*Knotts* and *Karo* jointly show that tracking a car's location by GPS is not a search no matter how long tracking lasts."), *cert. denied*, 135 S. Ct. 378 (2014).

---

[3]In *Barraza-Maldonado*, this court found constitutional the pre-*Jones* attachment of a GPS device to a vehicle in Arizona. ***Barraza-Maldonado***, 732 F.3d at 867, 868, 869. This court applied the Ninth Circuit's pre-*Jones*, post-*Knotts*/*Karo* precedent. *See **id.*** at 867-68, *citing **United States v. McIver***, 186 F.3d 1119 (9th Cir. 1999). This court's required application of another circuit's law has no relevance here.

This court's resolution parallels how the other circuits have resolved the issue. *See* cases listed in the appendix. Robinson and the ACLU stress factual differences about this case. But those differences do not affect the result. *See **Katzin***, 769 F.3d at 176 ("While the underlying facts of the cases are obviously relevant to determining whether reliance is objectively reasonable, the question is not answered simply by mechanically comparing the facts of cases and tallying their similarities and differences. Rather, *Davis'* inquiry involves a holistic examination of whether a reasonable officer would believe in good faith that binding appellate precedent authorized certain conduct . . . .").

B.

Robinson argues that counts 1-3 and counts 4-8 were misjoined under Federal Rule of Criminal Procedure 8(a). This court reviews joinder de novo. ***United States v. Scott***, 732 F.3d 910, 915 (8th Cir. 2013). "The rules are to be liberally construed in favor of joinder." ***United States v. Garrett***, 648 F.3d 618, 625 (8th Cir. 2011). "Two offenses may be charged and tried together if they are of the 'same or similar character.'" ***United States v. Tyndall***, 263 F.3d 848, 849 (8th Cir. 2001), *quoting* **Fed. R. Crim. P. 8(a)**. "[W]here the offenses are similar in character and occurred over a relatively short period of time and the evidence overlaps, joinder is ordinarily appropriate." ***Id.***

The court properly joined counts 1-3 and counts 4-8. The Paideia- and parking-related schemes are similar in character: Both involve fraud upon an employer under § 666. *See, e.g.*, ***Scott***, 732 F.3d at 915 (affirming joinder of counts related to three bank robberies, each prosecuted under 18 U.S.C. §§ 2113(a) and (d)). The evidence overlapped, as Robinson's day-to-day involvement at Paideia was admissible to show he was not inspecting parking meters. And counts 1-3 charged

conduct occurring at the same time as counts 7 and 8.[4]  *Cf.* ***United States v. Rodgers***, 732 F.2d 625, 629 (8th Cir. 1984) (joining counts for cocaine possession and cocaine possession with intent to distribute despite 20-month gap).  *But see* ***United States v. Mann***, 701 F.3d 274, 289, 290 (8th Cir. 2012) (finding improper—under Rule 8(b) analysis—joinder of grenade and machinegun possession with bombing when grenades were not used in bombing and no connection was alleged between machineguns and bombing).

Robinson also appeals the denial of his Rule 14(a) motion to sever.  "If the joinder of offenses . . . appears to prejudice a defendant . . . the court may order separate trials . . . ."  **Fed. R. Crim. P. 14(a)**.  Reviewing for abuse of discretion, "we will reverse only when that abuse of discretion results in severe or clear prejudice." ***United States v. Reynolds***, 720 F.3d 665, 669 (8th Cir. 2013).  "Severe prejudice occurs when a defendant is deprived of an appreciable chance for an acquittal." ***Garrett***, 648 F.3d at 625-26.  "There is a strong presumption against severing properly joined counts." ***Id.*** at 626.  "The defendant bears the burden of establishing prejudice." ***Id.***

Robinson "cannot show prejudice when evidence of the joined offense would be properly admissible in a separate trial for the other crime."  *See* ***Reynolds***, 720 F.3d at 670.  Evidence that Robinson was at Paideia was admissible to show he was not inspecting parking meters.  And the district court limited the risk of prejudice by instructing that Robinson was charged "with eight different crimes," and "Keep in mind that each count charges a separate crime.  You must consider each count separately and return a separate verdict for each count."  *See* ***Hiser v. XTO Energy,***

_____

[4]Count 1 charged wire fraud for a Paideia-related transfer on or about September 15, 2009.  Count 2 charged Paideia-related conduct between May 1, 2009, and April 30, 2010.  Count 3 charged Paideia-related conduct between May 1, 2010, and April 30, 2011.  Count 7 charged parking-related conduct in 2009.  Count 8 charged parking-related conduct in 2010.

***Inc.***, 768 F.3d 773, 777 (8th Cir. 2014) ("It is certainly reasonable to believe, absent evidence to the contrary, that the jury adhered to the judge's instructions.").

C.

Robinson claims the prosecution struck a black panelist in violation of *Batson*. This court reviews *Batson* rulings for clear error, "according great deference to the court's findings, and keeping in mind that 'the ultimate burden of persuasion regarding racial motivation rests with, and never shifts from' the party opposing the strike." ***United States v. Maxwell***, 473 F.3d 868, 871 (8th Cir. 2007), *quoting* ***Purkett v. Elem***, 514 U.S. 765, 768 (1995) (per curiam).

The Fourteenth Amendment "forbids the prosecutor to challenge potential jurors solely on account of their race." ***Batson***, 476 U.S. at 89.

> The trial court first determines whether the defendant has made a prima facie showing that a prosecutor's peremptory strike was based on race. If the defendant satisfies the first step, the burden then shifts to the prosecutor to present a race-neutral explanation for striking the juror. The prosecutor's stated reason need not be persuasive, or even plausible[,] as long as it is not inherently discriminatory. The burden then shifts back to the defendant at the third step to shoulder his ultimate burden of establishing purposeful discrimination. The final step involves evaluating the persuasiveness of the justification proffered by the prosecutor.

***Smulls v. Roper***, 535 F.3d 853, 859 (8th Cir. 2008) (en banc) (internal quotation marks and citations omitted).

"Striking a black panelist for reasons that apply 'just as well to an otherwise-similar nonblack who is permitted to serve' is evidence tending to prove purposeful discrimination." ***Edwards v. Roper***, 688 F.3d 449, 454 (8th Cir. 2012),

*quoting* **Miller-El v. Dretke**, 545 U.S. 231, 241 (2005). Yet, this court has upheld the use of "very fine" distinctions between jurors. **United States v. Morrison**, 594 F.3d 626, 630, 633 (8th Cir. 2010) (affirming strike of black juror because she had not been forthcoming about family member's legal troubles and because her husband had drinking problem, while white juror served whose son had four DWI offenses), *citing* **United States v. Davis**, 154 F.3d 772, 781 (8th Cir. 1998) (finding sufficient difference between drug counselor and drug prevention volunteer). *But see* **Snyder v. Louisiana**, 552 U.S. 472, 480, 483 (2009) ("implausibility" of striking black juror with student-teaching obligations who indicated trial would cause scheduling conflicts was "reinforced by the prosecutor's acceptance of white jurors who disclosed conflicting obligations that appear to have been at least as serious as" black juror's).

The government used peremptory strikes on five black panelists, including Panelist 26, the only black panelist mentioned in Robinson's appellate briefs. When Robinson raised a *Batson* challenge, the district court said: "I've got some concerns about these strikes as well." The government said it struck Panelist 26 because she said "she had been unemployed for the past two years." Robinson noted the jury information sheet for Panelist 7, a white male selected for service, was blank under current employment. (The government had not questioned Panelist 7; Robinson had, but not about employment.) The government replied, "I have that he worked in construction," and the defense said, "I'm just saying there's nothing listed on here." The court denied the *Batson* challenge, finding: "I cannot -- I don't know one way or the other what [Panelist 7] is doing, but [Panelist] 26 did identify herself in the voir dire questioning as being unemployed. I have no idea whether that is the case with respect to [Panelist 7] or not. And also the Government struck the other unemployed juror among the alternates . . . ."

The court did not clearly err in denying Robinson's *Batson* challenge. Because Robinson failed to clarify Panelist 7's employment status, Robinson "has not

identified one juror who shared . . . the qualit[y] that the government cited as a reason for dismissing" Panelist 26. *See* **Morrison**, 594 F.3d at 633. Robinson failed to "shoulder his ultimate burden of establishing purposeful discrimination." *See* **Smulls**, 535 F.3d at 859.

The government's questioning of Panelist 26, but not Panelist 7, does not demonstrate pretext. Robinson cites the *Miller-El* case, where the government "was trying to avoid black jurors" by asking "contrasting *voir dire* questions . . . to black and nonblack panel members, on two different subjects." **Miller-El**, 545 U.S. at 255. Here, the government's explanation for why it did not question Panelist 7—because his jury information sheet was blank under current employment whereas the entire employment section of Panelist 26's was blank—is sufficient.

D.

Robinson appeals rulings about the parking-related jury instructions. "We review a district court's rejection of a defendant's proposed instruction for abuse of discretion, and we recognize that district courts are entitled to broad discretion in formulating the jury instructions." **United States v. Picardi**, 739 F.3d 1118, 1126 (8th Cir. 2014).

Section 666 ("Theft or bribery concerning programs receiving Federal funds") provides:

(a) Whoever, if the circumstance described in subsection (b) of this section exists—
(1) being an agent of an organization, or of a State, local, or Indian tribal government, or any agency thereof—
(A) embezzles, steals, obtains by fraud, or otherwise without authority knowingly converts to the use of any person other than

> the rightful owner or intentionally misapplies, property that—
>> (i) is valued at $5,000 or more, and
>> (ii) is owned by, or is under the care, custody, or control of such organization, government, or agency . . .
>
> shall be . . . imprisoned not more than 10 years . . . .
>
> (b) . . . the organization, government, or agency receives, in any one year period, [more than] $10,000 under a Federal program . . . .

**18 U.S.C. § 666(a)**, **(b)**. The statute defines "agent" as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes a servant or employee, and a partner, director, officer, manager, and representative." **Id. § 666(d)(1)**.

The indictment charged Robinson as an agent of the City of St. Louis, a local government receiving more than $10,000 in federal funds each year charged. (The City's Department of Human Services received the funds.) Robinson proposed instructing that the jury must find he (1) was an agent of the agency that received the federal funds, and (2) had authority over those funds.

First, he proposed to instruct the jury: "If you find that Robinson was not an agent of the agency that received the federal funds, you must find him not guilty." This instruction misstates the law. Nothing in the plain language of § 666 requires that the defendant be an agent of the agency that received the funds. Section 666 "contains no requirement that the government prove some connection between the offense conduct and federal funds beyond the express statutory requirement found in § 666(b) which requires proof that the relevant organization, government, or agency received benefits under a federal program in excess of $10,000 in any one-year

-12-

period." ***United States v. Sabri***, 326 F.3d 937, 940 (8th Cir. 2003), *aff'd*, 541 U.S. 600, 606 (2004) ("Liquidity is not a financial term for nothing; money can be drained off here because a federal grant is pouring in there. . . . It is certainly enough that the statutes condition the offense on a threshold amount of federal dollars defining the federal interest . . . ."). *See also* ***Salinas v. United States***, 522 U.S. 52, 57 (1997) ("[T]he broad definition of the 'circumstances' to which the statute applies provides no textual basis for limiting [its] reach . . . . The statute applies to all cases in which an 'organization, government, or agency' receives the statutory amount of benefits under a federal program.").[5]

Second, Robinson proposed: "For an individual to be an agent of the City of St. Louis that individual must be authorized to act on behalf of the City of St. Louis with respect to its funds." Instead, the district court instructed: "If you find that the City of St. Louis received $10,000 or more in federal assistance [in the charged years], that element of the offense is established whether or not there was proof that the federal funds were affected in any way." The district court did not abuse its discretion by formulating this instruction. "[T]he plain language of [§ 666] does not

---

[5]Relatedly, Robinson argues that § 666(a)(1)(A) violates the Tenth Amendment as applied to him. The Supreme Court's reasoning in *Sabri*, in which the Court rejected a facial challenge to § 666(a)(2), forecloses that argument:

> Congress has authority under the Spending Clause to appropriate federal moneys to promote the general welfare, Art. I, § 8, cl. 1, and it has corresponding authority under the Necessary and Proper Clause, Art. I, § 8, cl. 18, to see to it that taxpayer dollars appropriated under that power are in fact spent for the general welfare, and not frittered away in graft or on projects undermined when funds are siphoned off or corrupt public officers are derelict about demanding value for dollars.

***Sabri***, 541 U.S. at 605. "The power to keep a watchful eye on expenditures and on the reliability of those who use public money is bound up with congressional authority to spend in the first place." ***Id.*** at 608.

require, as an element to be proved beyond a reasonable doubt, a nexus between the activity that constitutes a violation and federal funds." *United States v. Hines*, 541 F.3d 833, 836 (8th Cir. 2008) (adding that "Congress's attempt to preserve the integrity of federal funds by lessening the burden of federal prosecutors to prove what may be an impossible-to-trace, but very real, impact of local corruption on federal funds . . . would be undermined if defendants . . . could require the government to establish such a nexus"), *cert. denied*, 555 U.S. 1200 (2009).

At oral argument, Robinson directed this court's attention to *Bond v. United States*, the Supreme Court's 2014 decision that a statute criminalizing the possession and use of a chemical weapon did not reach a wife's attempt to injure her husband's lover. *Bond v. United States*, 134 S. Ct. 2077, 2093 (2014). "[I]t is incumbent upon the federal courts to be certain of Congress' intent before finding that federal law overrides the usual constitutional balance of federal and state powers." *Id.* at 2089 (internal quotation marks and citation omitted). *See also United States v. Bass*, 404 U.S. 336, 349 (1971) ("[W]e will not be quick to assume that Congress has meant to effect a significant change in the sensitive relation between federal and state criminal jurisdiction. In traditionally sensitive areas, such as legislation affecting the federal balance, the requirement of clear statement assures that the legislature has in fact faced, and intended to bring into issue, the critical matters involved in the judicial decision."). Here, "[i]n enacting § 666, Congress addressed a legitimate federal concern by licensing federal prosecution in an area historically of state concern." *Sabri*, 541 U.S. at 614 n.*. *See also* S. Rep. No. 98–225, at 369, *reprinted in* 1984 U.S.C.C.A.N. 3182, at 3510 ("A recurring problem in this area . . . has been that state and local prosecutors are often unwilling to commit their limited resources to pursue such thefts, deeming the United States the principal party aggrieved."), *recognized as authority by Sabri*, 326 F.3d at 943-44. *See also United States v. Peery*, 977 F.2d 1230, 1232, 1233 (8th Cir. 1992) (affirming § 666 conviction and noting that "Congress expressly intended that 18 U.S.C. § 666(b) be broadly construed").

Robinson challenges the sufficiency of the evidence supporting the parking-related counts. "We review de novo sufficiency of the evidence challenges, viewing the evidence most favorably to the jury verdict, resolving conflicts in favor of the verdict, and giving it the benefit of all reasonable inferences." *United States v. Lee*, 687 F.3d 935, 940 (8th Cir. 2012). "The jury's verdict must be upheld if there is an interpretation of the evidence that would allow a reasonable jury to find [Robinson] guilty beyond a reasonable doubt." *Id.*

There was sufficient evidence for a jury to find beyond a reasonable doubt that Robinson was an agent of the City. Robinson introduced a chart showing the Parking Division under the Treasurer's Office under the "Citizens of St. Louis" on a page titled "Government of the City of St. Louis, Missouri."[6] Robinson was paid from the City's main clearing account (where the federal funds were deposited). Richard R. Frank, the City's Director of Personnel, testified: the City processes the Treasurer's Office's payroll checks, which read "Treasurer's Office [above] City of St. Louis"; the St. Louis City Board of Aldermen reviews and approves Parking Division employee compensation; Treasurer's Office employees participate in the City's worker's compensation program; and, it is "fair" to say the Treasurer's Office was "really ultimately . . . responsible to the citizens of St. Louis as the voters." Over Robinson's objection, Frank testified that Parking Division employees are "authorized to act on behalf of the City of St. Louis"; "serve the people of the City of St. Louis"; and are "public servants in the City of St. Louis." Frank also testified that other offices—including the St. Louis Metropolitan Police Department, the Recorder of Deeds, and the Medical Examiner's Office—"are similar to the Parking

---

[6]For the reasons discussed below, the chart oversimplifies the nature of government in the City of St. Louis. Despite its flaws, the jury could find the chart useful for assessing whether Robinson was an agent of the City of St. Louis.

Division regarding their employees not necessarily being City of St. Louis employees, but nonetheless authorized to act on behalf of the City of St. Louis."

Robinson's theme on appeal is that the Treasurer's Office is not an office of the City of St. Louis. The government of the City of St. Louis is unique. The Treasurer's Office is located in City Hall, and the Treasurer's Office is listed on the City's Web site under "City Offices, Agencies, Departments and Divisions," in accordance with Missouri law. The Constitution of Missouri recognizes the "city of St. Louis . . . both as a city and as a county." **Art. VI, § 31, Mo. Const.** The Constitution authorizes the voters of the City of St. Louis to control any "county" office (except for the office of the circuit attorney). **Id.** In 1938, the Supreme Court of Missouri held that the mayor of St. Louis lacked authority to appoint the treasurer of the City of St. Louis (and removed the appointed treasurer). *State v. Dwyer*, 124 S.W.2d 1173, 1176 (Mo. banc 1938). In response, in 1939, the Missouri legislature passed a law providing that the treasurer of the City of St. Louis "shall be commissioned by the mayor, and shall serve . . . until his successor is duly elected or appointed and qualified. In the event of a vacancy in the office of city treasurer, arising from any cause, such vacancy shall be filled by appointment by the mayor." **§ 82.490 RSMo**.[7] By state statute, the treasurer of the City of St. Louis "shall perform such duties as are, or may be, required of him by" city ordinance. **§ 82.510 RSMo**. Section 17.62.230 of the St. Louis City Revised Code requires the treasurer to establish a Parking Meter Division. *See Rencher v. Jones*, 440 S.W.3d 472, 473-74 (Mo. App. 2014). By state statute, the treasurer is the supervisor of the City's parking meters. **§ 82.485.1 RSMo**. Although the treasurer's salary is set by state statute, it "may be annually increased by an amount equal to the annual salary adjustment for employees of the city of St.

_____

[7]All other county treasurers in Missouri are "commissioned by the governor." **§ 54.030 RSMo**. *See also, e.g.*, **§ 49.050 RSMo.** ("[T]he governor shall thereupon commission all such persons as [county] commissioners . . . ."); **§ 51.020 RSMo.** (clerk of the county commission); **§ 55.050 RSMo.** (county auditors); **§ 58.020 RSMo.** (county coroners).

Louis as approved by the board of aldermen." **§ 82.520 RSMo**. The salaries of the treasurer's deputies, assistants, and clerks "may be fixed by [city] ordinance," § 82.530 RSMo., and "shall be paid out of the city treasury," § 82.520 RSMo. St. Louis City Ordinance 69196 establishes position classifications and pay grades for Parking Division employees of the Treasurer's Office. In sum, the governmental framework of Robinson's employment supports the jury's factual finding that Robinson was an agent of the St. Louis city government that received federal funds.

F.

Robinson appeals the admission of Frank's opinion that Robinson was an "agent" of the City of St. Louis. This court assumes, without deciding, it was an inadmissible lay opinion. *See* **Fed. R. Evid. 704** advisory committee's note ("[T]he question, 'Did T have capacity to make a will?' would be excluded, while the question, 'Did T have sufficient mental capacity to . . . formulate a rational scheme of distribution?' would be allowed.").

"Even when an evidentiary ruling is improper, we will reverse a conviction on this basis only when the ruling affected substantial rights or had more than a slight influence on the verdict." *United States v. Robinson*, 639 F.3d 489, 492 (8th Cir. 2011). "An error in admitting testimony may be harmless if the testimony is corroborated by independent sources, or if it amounts to cumulative evidence on matters already before the jury." *United States v. Melecio-Rodriguez*, 231 F.3d 1091, 1094 (8th Cir. 2000) (per curiam). Frank's opinion testimony "was cumulative of and corroborated by other evidence"—for example, the organizational chart and "City of St. Louis" notation on Robinson's pay checks—and meshed with the actual governmental framework of Robinson's employment. *See United States v. Espinoza*, 684 F.3d 766, 781 (8th Cir. 2012). Given this independent evidence, Robinson cannot show that Frank's opinion testimony "had more than a slight influence on the verdict." *See Robinson*, 639 F.3d at 492.

-17-

G.

Robinson challenges the substantive reasonableness of his sentence. This court reviews for abuse of discretion. *Gall v. United States*, 552 U.S. 38, 51 (2007). "A district court abuses its discretion and imposes an unreasonable sentence when it fails to consider a relevant and significant factor, gives significant weight to an irrelevant or improper factor, or considers the appropriate factors but commits a clear error of judgment in weighing those factors." *United States v. Fronk*, 606 F.3d 452, 454 (8th Cir. 2010). *See also* **18 U.S.C. § 3553(a)** (sentencing factors).

The court sentenced Robinson to 24 months' imprisonment; the Guidelines range was 46 to 57 months. Robinson argues the court sentenced him "because he failed to confess wrongdoing." Rather, the court reviewed the § 3553(a) factors and found imprisonment necessary because the court did "not see or hear anything from [Robinson] that suggests that anything short of prison has even the potential to deter him from like conduct in the future [and] to protect society from him." The court did not abuse its discretion. Robinson's below-Guidelines sentence is not substantively unreasonable. *See* **United States v. Black**, 670 F.3d 877, 882 (8th Cir. 2012) ("[W]here a district court has sentenced a defendant below the advisory guidelines range, it is nearly inconceivable that the court abused its discretion in not varying downward still further.").

H.

This court reviews the "decision to award restitution for an abuse of discretion." *United States v. Kay*, 717 F.3d 659, 666 (8th Cir. 2013). Under the Mandatory Victims Restitution Act, a court "shall" order a defendant convicted of "an offense against property under this title" to "make restitution to the victim of the offense." **18 U.S.C. §§ 3663A(a)(1)**, **(c)(1)**. "[T]he government must prove 'the amount of the loss sustained by [the] victim' as a result of the offense by a

preponderance of the evidence." ***United States v. Chalupnik***, 514 F.3d 748, 754 (8th Cir. 2008) (second alteration in original), *quoting* **18 U.S.C. § 3664(e)**. Restitution "is limited to the victim's provable actual loss." ***Id.***

Robinson argues that DESE reimbursed Paideia only for DESE-approved expenditures, like school books. That is, he argues, restitution "enabled a double recovery" because DESE also "receive[d] the educational services obtained with" its funding. Robinson's argument assumes either he did not misapply Paideia funds, or Paideia had a non-DESE funding source. But, the jury found Robinson guilty of two Paideia-related counts of federal program theft (which he does not appeal), and Robinson presents no evidence that Paideia had a non-DESE funding source. The court's restitution order was no abuse of discretion.

\* \* \* \* \* \* \*

The judgment is affirmed.

_____

**Appendix**

***United States v. Taylor***, 2015 WL 162655, at \*1 (7th Cir. Jan. 14, 2015) (per curiam) ("Because the officers used the GPS monitor in objectively reasonable reliance on binding appellate precedent in effect [in 2011], the suppression motion was properly denied.").

***United States v. Katzin***, 769 F.3d 163, 168, 184 (3d Cir. 2014) (en banc) (holding exclusionary rule inapplicable to GPS evidence acquired from device attached to vehicle in December 2010), *cert. denied*, 2015 WL 732186 (2015).

***United States v. Stephens***, 764 F.3d 327, 329, 338 (4th Cir. 2014) ("[W]e believe that a reasonably well-trained officer in this Circuit could have relied on *Knotts* as permitting the type of warrantless GPS usage" in May 2011).

***United States v. Fisher***, 745 F.3d 200, 201, 206 (6th Cir.) ("At the time the police placed the tracking device on Fisher's vehicle [May 2010], the training and guidance provided to these officers by various police agencies and prosecutors all indicated that such conduct was consistent with the Constitution; . . . the relevant Supreme Court case law had indicated such a practice was lawful; and our precedent also provided binding authority permitting such conduct."), *cert. denied*, 135 S. Ct. 676 (2014).

***United States v. Smith***, 741 F.3d 1211, 1225 (11th Cir. 2013) (where then-binding circuit law "specifically authorized officers to install an electronic tracking device once they developed reasonable suspicion, we cannot discern appreciable deterrence that would justify excluding" evidence seized as a result of GPS tracking) (internal quotation marks omitted), *cert. denied*, 135 S. Ct. 704 (2014).

***United States v. Aguiar***, 737 F.3d 251, 255, 262 (2d Cir. 2013) (finding *Knotts* and *Karo* "sufficient . . . at the time the GPS device was placed [January 2009] for the officers here to reasonably conclude a warrant was not necessary"), *cert. denied*, 135 S. Ct. 886 (2014).

***United States v. Sparks***, 711 F.3d 58, 60, 66, 67 (1st Cir.) (concluding that *Knotts* and First Circuit case authorized law enforcement's 11-day use of GPS device affixed to car in December 2009), *cert. denied*, 134 S. Ct. 204 (2013).

***United States v. Andres***, 703 F.3d 828, 834-35 (5th Cir.) ("In December 2009, it was objectively reasonable for agents operating within the Fifth Circuit to believe that

warrantless GPS tracking was permissible under circuit precedent."), *cert. denied*, 133 S. Ct. 2814 (2013).

*United States v. Pineda-Moreno*, 688 F.3d 1087, 1091 (9th Cir. 2012) ("[T]he agents' conduct in attaching the tracking devices in public areas and monitoring them was authorized by then-binding circuit precedent."), *cert. denied*, 133 S. Ct. 994 (2013).

*Cf. United States v. Davis*, 750 F.3d 1186, 1189 n.2 (10th Cir. 2014) ("Applying the [*Davis*] good-faith exception . . . several Circuits have held that, before *Jones*, it was objectively reasonable for police to believe that warrantless GPS tracking did not violate the Fourth Amendment. . . . We need not decide the good-faith issue, as standing is a sufficient ground to affirm the district court's denial of [defendant's] suppression motion.").