# United States Court of Appeals
## For the Eighth Circuit

_____

No. 22-1066

_____

United States of America

*Plaintiff - Appellee*

v.

Joshua Andrew Dewilfond

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Southern District of Iowa - Eastern

_____

Submitted: October 21, 2022
Filed: December 2, 2022
[Published]

_____

Before LOKEN, COLLOTON, and ERICKSON, Circuit Judges.

_____

PER CURIAM.

Joshua Dewilfond conditionally pleaded guilty to conspiracy to distribute a
controlled substance and being a felon in possession of ammunition. He appeals the

conviction and 200 month sentence, arguing the district court[1] erred in denying his motion to suppress because law enforcement violated his Fourth Amendment rights when he was arrested "based on the warrantless collection of GPS locational data." The data was collected using a tracking device installed on a vehicle with the vehicle owner's consent before Dewilfond borrowed it. Dewilfond initially argued this issue in a brief filed under Anders v. California, 386 U.S. 738 (1967). We denied counsel's motion to withdraw, treated the Anders brief as an opening brief on the merits, and requested a responsive brief from the government. Reviewing the district court's legal conclusions *de novo* and its factual findings for clear error, we affirm the denial of Dewilfond's motion to suppress. United States v. Robinson, 781 F.3d 453, 458 (8th Cir. 2015) (standard of review).

Scott County, Iowa, Detective Greg Hill was the only witness at the June 2021 suppression hearing. Detective Hill testified that on September 25, 2020, he was investigating methamphetamine distribution in the Quad Cities area. A confidential source ("CS"), one of three sources who had informed Hill that Dewilfond was involved in distributing methamphetamine, informed Hill that Dewilfond wanted to borrow the CS's vehicle to purchase a large quantity of methamphetamine outside the Quad Cities area. With the CS's consent, law enforcement placed a GPS tracking device on the vehicle. Later that day, the CS advised he had loaned the vehicle to Dewilfond. Law enforcement monitored the vehicle's location for the next two days in Davenport and the surrounding Quad Cities. On September 27, the vehicle traveled west to Oskaloosa, Iowa, where it stopped briefly at a Walmart store and then at two gas stations before returning to Davenport. When it arrived at the Baymont Inn, Hill testified that officers surrounded the vehicle "for a takedown" and approached its occupants with guns drawn due to Dewilfond's "history of eluding and the possibility of firearms."

---

[1]The Honorable John A. Jarvey, then Chief Judge of the United States District Court for the Southern District of Iowa, now retired.

Dewilfond, in the front passenger seat, told the driver, his girlfriend, to "go, go, go," but officers stopped her from putting the vehicle in drive. Dewilfond initially refused the demand to show his hands. Both occupants were removed from the vehicle and arrested. One officer noted the vehicle smelled like marijuana. Detective Hill interviewed Dewilfond after obtaining a Miranda waiver. Dewilfond said that Hill would find methamphetamine in the vehicle. In a warrantless search of the vehicle later that day, officers found over 1,000 grams of methamphetamine, ammunition, and other contraband. A subsequent warrant search of Dewilfond's apartment and a second vehicle recovered additional contraband.

Before trial, Dewilfond moved to suppress all direct evidence and derivative evidence seized as a result of the "warrantless surveillance of [his] location through use of [GPS] monitoring." He argued that the "derivative evidence" included his involuntary post-Miranda statements to Detective Hill and the contraband recovered from subsequent searches of the vehicle, Dewilfond's cell phones, his apartment, and the second vehicle. In denying the motion, the district court concluded that Dewilfond's statements to Detective Hill were not involuntary and that "any expectation of privacy that Dewilfond had in the vehicle was eviscerated by [the CS's] consent to the installation of the GPS." On appeal, Dewilfond raises a single issue: "Whether the district court erred by denying Mr. Dewilfond's motion to suppress evidence derived from the warrantless GPS tracking of his movements." Thus, other issues are "not properly before us." United States v. LeBeau, 867 F.3d 960, 973 (8th Cir. 2017), citing Fed. R. Crim. P. 12(b)(3), (c)(3); see United States v. Mejia-Perez, 635 F.3d 351, 353-54 (8th Cir. 2011).

Dewilfond argues he had a reasonable expectation of privacy in his location and movements in the borrowed vehicle, making law enforcement's warrantless surveillance an illegal Fourth Amendment search. The argument is based on United States v. Jones, 565 U.S. 400, 404 (2012), where the Supreme Court held that *installation* of a GPS tracking device on a suspect's vehicle is a Fourth Amendment

search.  However, <u>Jones</u> while highly relevant does not control the issue in this case for two distinct reasons.  First, as Dewilfond concedes, the CS consented to installation of the GPS tracker before Dewilfond borrowed the vehicle.  In <u>Jones</u> the Court noted that installation of a tracking device in a container "*with the consent of the original owner . . .* when the container is delivered to a buyer having no knowledge of [its] presence" presents a different question.  <u>Id.</u> at 409-10 (discussing <u>United States v. Karo</u>, 468 U.S. 705, 712 (1984); emphasis in original).  Second, Dewilfond challenges the *surveillance* of his location using a GPS tracking device, not the device's initial installation.  The Court in <u>Jones</u> expressly declined "to grapple with the 'vexing problems' [posed by GPS monitoring] where a classic trespassory search is not involved."  <u>Id.</u> at 412-13 (cleaned up).  We will separately consider these distinctions.

**A.**  Unlike the investigative target in <u>Jones</u>, whose wife owned the vehicle to which law enforcement attached a tracking device while it was parked in public, Dewilfond had no property interest or expectation of privacy in the vehicle when CS consented to installation of a GPS tracking device before Dewilfond borrowed the car.  The district court found that the consent was validly given.  Consent is a well-established exception to the warrant requirement.  <u>See</u> <u>Karo</u>, 468 U.S. at 717. Detective Hill's testimony established that CS's consent to install the device included consent for the government to monitor the vehicle's location, at least in public places, to determine if it was engaging in an intended drug purchase, as the CS reported.  At that time, Dewilfond had *neither* a possessory interest in that locational information nor a reasonable expectation of its privacy.  Whether CS's consent to *install* the tracking device would have extended to a warrantless *search* of the vehicle when the consenting owner was not present is a separate issue we need not address.

**B.**  Despite CS's consent, Dewilfond argues, he had a reasonable expectation of privacy in his public movements and location in the borrowed vehicle.  We disagree.  This contention ignores the well-established Fourth Amendment principle

that a person "has a lesser expectation of privacy in a motor vehicle because its function is transportation." Cardwell v. Lewis, 417 U.S. 583, 590 (1974). As the Supreme Court subsequently held in United States v. Knotts, 460 U.S. 276, 281 (1983), "[a] person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another." In this case, as in United States v. Marquez, 605 F.3d 604, 610 (8th Cir. 2010), "[t]he device merely allowed the police to reduce the cost of lawful surveillance" of a vehicle they suspected was involved in drug trafficking. During the entire two days of surveillance, the vehicle remained in public view; thus, use of the GPS tracker "allow[ed] law enforcement to conduct the same sort of surveillance it could conduct visually." Robinson, 781 F.3d at 460 (quotation omitted).

Dewilfond argues this case is controlled by Carpenter v. United States, 138 S. Ct. 2206 (2018), not Knotts. We disagree. At issue in Carpenter was a search of historical cell phone location data stored by third parties, *not* real-time tracking of a vehicle operating on public roadways. The Court in Carpenter emphasized that its holding was narrow. See id. at 2220 ("We do not express a view on matters not before us [such as] real-time [cell phone location data]."). Here, unlike Carpenter, law enforcement officers with reason to suspect a vehicle was being used for drug trafficking briefly used real-time GPS data "to find [Dewilfond's] location in public, not to peer into the intricacies of his private life." United States v. Hammond, 996 F.3d 374, 389 (7th Cir. 2021), cert. denied, 142 S. Ct. 2646 (2022). This is an independent ground to affirm the district court's decision.

For these reasons, we conclude the district court properly denied Dewilfond's motion to suppress because law enforcement in obtaining and using real-time GPS tracking data with CS's consent in connection with their investigation of the vehicle's suspected use in drug trafficking did not violate the Fourth Amendment. The judgment of the district court is affirmed.

_____