# United States Court of Appeals

### For the Eighth Circuit

_____

No. 13-2320

_____

United States of America

*Plaintiff - Appellee*

v.

Rory Allen Meeks

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

_____

Submitted: April 18, 2014
Filed: July 1, 2014

_____

Before SMITH, COLLOTON, and GRUENDER, Circuit Judges.

_____

GRUENDER, Circuit Judge.

A jury found Rory Meeks guilty of conspiracy to manufacture 1,000 or more marijuana plants, in violation of 21 U.S.C. §§ 841(a)(1) and 846. The district court[1]

_____

[1]The Honorable Linda R. Reade, Chief Judge, United States District Court for the Northern District of Iowa.

sentenced Meeks to 240 months' imprisonment. Meeks appeals his conviction and sentence. For the following reasons, we affirm.

## I. Background

In the fall of 2004, Rebecca Tuffree began pruning Meeks's marijuana plants located at the home of Keith Rambo. Tuffree worked at Rambo's house for approximately two years, and during that time, she became more involved with Meeks's marijuana-growing operation. In June 2005, Tuffree assisted Meeks in planting marijuana along cornfields near creeks in rural Iowa. During the growing season, they tended to the marijuana plants, watering and fertilizing them. From October to November, Meeks and Tuffree harvested the marijuana, taking it to Rambo's property for it to be pruned and dried. Tuffree and Meeks followed this process again in 2006, and during that year, Beth Seiler, a friend of Tuffree's, began assisting Tuffree in the pruning process.

In February 2007, Tuffree purchased a house. From 2007 through April 2011, Meeks and Tuffree used this home for marijuana production. During this time, Meeks was in charge of all the outdoor operations. He decided where to plant the marijuana and drew maps to show where the marijuana plots were located. Meeks and others, including Seiler, went into the fields to plant the marijuana, cultivate it, and harvest it. Tuffree then processed the marijuana at her home. Tuffree also grew marijuana in her home using grow lamps. This growing operation yielded between 300 and 500 harvested marijuana plants per year between 2007 and 2010. Both Meeks and Tuffree sold the marijuana that they produced. Tuffree also "fronted" some of the marijuana to Seiler's son, Daniel Lang, and Andrew Falco—that is, Lang and Falco bought the marijuana on credit and repaid Tuffree from the resale proceeds.

Law enforcement officers executed a search warrant at Tuffree's residence in April 2011. The officers recovered 317 marijuana plants and vacuum-sealed bags

containing approximately 10.3 kilograms of processed marijuana. The officers also found items used in the manufacture of marijuana, including two grow lights and fertilizer. Additionally, officers found the maps drawn by Meeks depicting the varieties of marijuana and quantities of each variety that had been planted along the fields, prescription pill bottles with Meeks's name on them, and a credit card in Meeks's name.

On November 28, 2012, a federal grand jury returned a two-count indictment, charging Meeks with conspiring to manufacture 100 or more marijuana plants ("Count I") and with manufacturing and attempting to manufacture 100 or more marijuana plants ("Count II"). The case proceeded to trial, and the jury found Meeks guilty of Count I and made a special finding that the conspiracy involved 1,000 or more marijuana plants. The jury found Meeks not guilty of Count II. The district court sentenced Meeks to 240 months' imprisonment, the mandatory minimum sentence based on the jury's special finding and Meeks's prior felony drug conviction.[2]

## II. Discussion

On appeal, Meeks first argues that the evidence was insufficient to support the jury's verdict. We review the sufficiency of the evidence *de novo*, viewing the evidence in the light most favorable to the guilty verdict and granting it all reasonable inferences that are supported by that evidence. *United States v. Ironi*, 525 F.3d 683, 689-90 (8th Cir. 2008). "This standard of review is strict; we will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Barker*, 556

---

[2]In 1987, Meeks was convicted of two counts of aiding and abetting the distribution of cocaine and one count of conspiracy to distribute cocaine. *See United States v. Meeks*, 857 F.2d 1201, 1202 (8th Cir. 1988).

F.3d 682, 687 (8th Cir. 2009) (quoting *United States v. Cole*, 525 F.3d 656, 661 (8th Cir. 2008)).

"To obtain a conviction for conspiracy, the Government must prove (1) the existence of an agreement to achieve an illegal purpose, (2) the defendant's knowledge of the agreement, and (3) the defendant's knowing participation in the agreement." *United States v. May*, 476 F.3d 638, 641 (8th Cir. 2007). "The agreement may be a tacit understanding rather than a formal, explicit agreement." *Id.* Meeks contends that the Government presented insufficient evidence to prove that he knew about the conspiracy and intentionally joined it. We disagree. Tuffree testified at length about Meeks's role in the conspiracy. She explained that she met Meeks when she was pruning Meeks's marijuana at Rambo's house. Tuffree further explained how the marijuana operations evolved after she purchased a house in 2007. Tuffree identified Meeks as the person in charge of the planting, cultivating, and harvesting of the marijuana grown in the fields. She testified that both she and Meeks would sell the processed marijuana. Seiler corroborated Tuffree's testimony when Seiler admitted that she worked with Meeks in the fields cultivating the marijuana, returning a couple of times a week to weed and water the marijuana plants until harvest. The Government introduced maps, which Tuffree identified as being drawn by Meeks, depicting the location of the marijuana plants in the fields. Moreover, the Government introduced evidence linking Meeks to Tuffree's residence, the center of the marijuana production operation, including the prescription pill bottles and credit card with his name on them. This evidence is more than sufficient to allow a reasonable jury to conclude beyond a reasonable doubt that Meeks knowingly participated in an agreement to manufacture marijuana. *See United States v. Coleman*, 525 F.3d 665, 666 (8th Cir. 2008) (holding that the evidence was clearly sufficient for a reasonable jury to find the defendant guilty of conspiracy where cooperating witnesses testified to the defendant's substantial involvement in a long-standing conspiracy to distribute crack cocaine).

Meeks argues that the testimony of Tuffree and Seiler were too inconsistent and contradictory to support the jury's verdict. Meeks points to the inconsistency in their testimony regarding the role that Seiler's son, Lang, played in the conspiracy. Tuffree testified that Lang directly assisted Meeks in the field during the harvesting of the marijuana; while Seiler only testified that her son sold marijuana. "We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." *United States v. Jefferson*, 725 F.3d 829, 834 (8th Cir. 2013) (quoting *Coleman*, 525 F.3d at 666). "The jury's 'conclusions on these issues are virtually unreviewable on appeal.'" *Id.* (quoting *United States v. Thompson*, 560 F.3d 745, 749 (8th Cir. 2009)). Here, the alleged inconsistency was minor and inconsequential to the issue of Meeks's guilt. More importantly, both Tuffree's and Seiler's accounts implicated Meeks in the conspiracy and corroborated that he was in charge of planting, cultivating, and harvesting the marijuana in the fields. Additionally, any potential bias and Tuffree's and Seiler's incentives to lie were well-developed on cross-examination but rejected by the jury. *See Id.* Thus, the jury found Tuffree and Seiler to be credible, and minor inconsistencies in their testimony do not create a basis upon which we would disturb the jury's finding. *See United States v. Hodge*, 594 F.3d 614, 618-19 (8th Cir. 2010). Accordingly, we have no difficulty concluding that, even with the inconsistency, the evidence was sufficient to support the jury's verdict.

Meeks next contends that the district court abused its discretion in admitting into evidence five out-of-court statements because the statements were inadmissible hearsay. Specifically, Meeks challenges three witnesses' accounts of out-of-court statements made by Tuffree as inadmissible hearsay: the testimony that (1) Tuffree told Lang that Meeks was Tuffree's partner; (2) Tuffree told Lang that Meeks did the planting, heavy lifting, and harvesting of the marijuana; (3) Tuffree told Seiler that Meeks was Tuffree's partner; (4) Tuffree told Seiler that Meeks was involved in the marijuana growing operation; (5) Tuffree told Falco that an individual known as

"Cowboy"[3] was involved in the growing operation. The Government argues that these statements were admissible as declarations of a coconspirator under Fed. R. Evid. 801(d)(2)(E). "We review the district court's evidentiary rulings for an abuse of discretion, 'keeping in mind that its discretion is particularly broad in a conspiracy trial.'" *United States v. Davis*, 457 F.3d 817, 824-25 (8th Cir. 2006) (quoting *United States v. Jordan*, 260 F.3d 930, 932 (8th Cir. 2001)).

Out-of-court statements offered to prove the truth of the matter asserted are inadmissible hearsay. Fed. R. Evid. 801(c), 802. However, "[i]t is well-established that an out-of-court declaration of a coconspirator is admissible against a defendant if the government demonstrates (1) that a conspiracy existed; (2) that the defendant and the declarant were members of the conspiracy; and (3) that the declaration was made during the course and in furtherance of the conspiracy." *United States v. Bell*, 573 F.2d 1040, 1043 (8th Cir. 1978); *see also* Fed. R. Evid. 801(d)(2)(E); *United States v. Cowling*, 648 F.3d 690, 698-99 (8th Cir. 2011). Meeks argues that the Government did not demonstrate that Meeks was a member of the conspiracy with Tuffree. For the reasons discussed above, the Government presented ample evidence that Meeks was a member of the conspiracy with Tuffree, and thus we reject this argument.

Meeks also argues that none of Tuffree's declarations were made in furtherance of the conspiracy but rather were mere "idle chatter" and simply informed the listener of Tuffree's criminal activities. We also reject this argument. While "a statement that simply informs the listener of the declarant's criminal activities is not made in furtherance of the conspiracy," "we interpret the phrase in furtherance of the conspiracy broadly." *United States v. Cazares*, 521 F.3d 991, 999 (8th Cir. 2008) (quoting *United States v. Davis*, 457 F.3d 817, 825 (8th Cir. 2006)). "Statements

---

[3]Tuffree often would introduce Meeks by his nickname, "Cowboy," to others involved in the operation. This nickname derives from the fact that Meeks was a rodeo clown and bullfighter.

made 'in furtherance' of a conspiracy include those which identify the coconspirators or the coconspirators' supply source for the illegal drugs and those statements which discuss a coconspirator's role in the conspiracy." *United States v. Arias*, 252 F.3d 973, 977 (8th Cir. 2001) (internal citation omitted). In each of the challenged statements, Tuffree either identifies Meeks as a coconspirator to another coconspirator or discusses Meeks's role in the conspiracy. Therefore, the statements were made in furtherance of the conspiracy. *See id.*; *see also Cazares*, 521 F.3d at 999; *United States v. Meeks*, 857 F.2d 1201, 1203 (8th Cir. 1988). Finally, Meeks claims that Tuffree's statement to Falco was not in furtherance of the conspiracy because Falco was not a member of the conspiracy. Meeks contends that Falco only had a buyer-seller relationship with Tuffree, and thus Tuffree's statement identifying Cowboy as her partner did not further the conspiracy. However, the evidence demonstrated that Falco was a member of the conspiracy. Tuffree fronted Falco approximately ten pounds of marijuana over a six month period, with the understanding that Falco would sell the marijuana and repay Tuffree with the proceeds. *Cf. United States v. Pizano*, 421 F.3d 707, 719-20 (8th Cir. 2005) (holding that evidence of distribution of large amounts of drugs over an extended period, including fronting transactions, constituted ample evidence to support a reasonable jury's finding of a conspiracy); *United States v. Eneff*, 79 F.3d 104, 105 (8th Cir. 1996) (holding that "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of conspiracy to distribute"). Therefore, we conclude that the district court did not abuse its discretion in admitting the five out-of-court statements made by Tuffree under Fed. R. Evid. 801(d)(2)(E).

Finally, Meeks argues that his sentence violates the Eighth Amendment. We review Eighth Amendment sentencing challenges *de novo*. *United States v. Capps*, 716 F.3d 494, 498 (8th Cir. 2013). The Supreme Court has recognized that "[t]he Eighth Amendment, which forbids cruel and unusual punishments, contains a narrow proportionality principle that applies to noncapital sentences." *Ewing v. California*, 538 U.S. 11, 20 (2003) (O'Connor, J., plurality) (quotation and internal quotation

marks omitted).  However, it is an extremely rare case where "a sentence may be so disproportionate to the underlying crime that [it] runs afoul of the Eighth Amendment."  *United States v. Baker*, 415 F.3d 880, 882 (8th Cir. 2005).

The district court sentenced Meeks to the mandatory minimum sentence of 240 months' imprisonment.  This sentence was based on the jury's special finding that the conspiracy involved 1,000 or more marijuana plants and on the fact that Meeks had previously been convicted of a felony drug offense.  *See* 21 U.S.C. §§ 841(b)(1)(A), 851.  We repeatedly have held that applying a mandatory minimum penalty for drug offenses does not violate the Eighth Amendment.  *United States v. Garcia*, 521 F.3d 898, 901 (8th Cir. 2008) (collecting cases).  Meeks argues, however, that the 20-year mandatory minimum sentence is grossly disproportionate to the underlying crime because (1) the conspiracy involved the manufacture and sale of marijuana rather than "harder-core" substances, such as cocaine; (2) the prior drug conviction which qualified Meeks for the mandatory minimum occurred twenty-six years ago; (3) the sentence results in a near-life sentence given Meeks's age; and (4) the profit from the growing and sales operation was negligible.  None of these arguments demonstrates that Meeks's case is the extreme case that violates the Eighth Amendment.  *See United States v. Burton*, 894 F.2d 188, 190, 192 (6th Cir. 1990) (holding that marijuana's Schedule I classification is not irrational, and thus the resulting penalties do not violate the Eighth Amendment); *United States v. Fogarty*, 692 F.2d 542, 547-48 (8th Cir. 1982) (holding that marijuana's Schedule I classification is not irrational); *United States v. Gallegos*, 553 F. App'x 527, 532-33 (6th Cir. 2014) (holding that 20-year mandatory minimum sentence for conspiring to distribute at least 1,000 kilograms of marijuana did not violate the Eighth Amendment); *United States v. Hoffman*, 710 F.3d 1228, 1232-33 (11th Cir. 2013) (rejecting argument that life sentence based on convictions that occurred approximately twenty-five years earlier when defendant was a juvenile constituted cruel and unusual punishment); *United States v. Mathison*, 157 F.3d 541, 551 (8th Cir. 1998) (holding that a sentence "although in excess of a defendant's life expectancy, does not violate the Eighth Amendment"); *Ewing*, 538

U.S. at 28-30 (holding that the defendant's sentence of 25 years' to life imprisonment was not unconstitutionally disproportionate where the defendant stole three golf clubs worth about $1,200 and was a recidivist).  Accordingly, we conclude that a term of 240 months' imprisonment, imposed for Meeks's offense of felony drug conspiracy under 21 U.S.C. §§ 841(b)(1)(A), is not "grossly disproportionate," *Ewing*, 538 U.S. at 30, and we affirm his sentence.

## III.  Conclusion

For the aforementioned reasons, we affirm.

_____