# United States Court of Appeals
## For the Eighth Circuit

_____

No. 15-3313
_____

United States of America,

*Plaintiff - Appellee*,

v.

Luciano Camberos-Villapuda, also known as Benjamin Sicariros-Camboros, also known as Luciano Ortiz, also known as "Mister", "Lucio",

*Defendant - Appellant.*
_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls
_____

Submitted: May 19, 2016
Filed: August 12, 2016
_____

Before RILEY, Chief Judge, COLLOTON and KELLY, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Luciano Camberos-Villapuda was charged with conspiracy to distribute 500 grams or more of methamphetamine. *See* 21 U.S.C. §§ 841(a)(1), 846. Before trial, he moved to suppress evidence seized and statements he made during a search in

Denver, Colorado. The district court[1] denied the motion as to the physical evidence, and a jury convicted Camberos. The court sentenced Camberos to life imprisonment, as mandated by 21 U.S.C. § 841(b)(1)(A). Camberos appeals the district court's denial of his motion to suppress and imposition of a life sentence. We affirm.

I.

On May 30, 2013, police received a tip that an out-of-state vehicle would be delivering methamphetamine to a home near the intersection of East Alameda Avenue and South Holly Street in Denver. In response, Detectives Matthew Baughman and James Edinger of the Denver Police Department conducted surveillance of the area.

In the early morning hours of May 31, Baughman was walking in the neighborhood's alleys. As he approached the home at 5620 East Alameda Avenue, Baughman heard grinding noises coming from the residence's backyard. Through an opening large enough for a vehicle to pass through on the south side of the residence's slatted fence, Baughman observed a man, later identified as Camberos, using a flashlight to work under a red Ford Expedition. The Expedition was parked on the east side of the residence and bore Nebraska license plates. Baughman was unsure when the vehicle had arrived to the residence.

After moving further down the alley, Baughman watched Camberos for approximately fifteen to twenty minutes through gaps in the fence's east side. Baughman observed Camberos under the Expedition grinding on an area in the center of the passenger side of the vehicle. During that time, Baughman saw Camberos crawl out from underneath the Expedition, approach the opening in the fence, and peer

---

[1]The Honorable Karen E. Schreier, United States District Judge for the District of South Dakota, adopting the report and recommendations of the Honorable John E. Simko, United States Magistrate Judge for the District of South Dakota, now retired.

down the alley. He also witnessed Camberos enter the home briefly and then return to work on the vehicle.

Based on his training and experience, Baughman was suspicious that Camberos was making a "vehicle hide"—an alteration made to a vehicle's frame, in which narcotics, weapons, and firearms can be hidden. After Baughman consulted Detective Edinger, the detectives requested assistance from uniformed officers. Three officers arrived, and together with Baughman, they walked onto the property through the large opening in the fence's south side.

Camberos stopped working on the vehicle, and the uniformed officers contacted him near the rear of the Expedition. Camberos introduced himself as "Benjamin Sicairos-Camberos" and, upon the officers' request, produced his wallet and provided identification. Baughman was positioned nearby, and noticed from his vantage point that Camberos was "extremely nervous," perspiring, and constantly clearing his throat. At one point, Camberos retrieved a bottle of water from near the house because he was having trouble speaking.

Because Baughman could not hear the conversation between Camberos and the uniformed officers, one of the officers relayed Camberos's responses. The officer reported that Camberos denied working on the Expedition initially and later claimed that he was repairing the vehicle's wheel bearings. Camberos also said that he did not know who owned the vehicle. The officers checked the Expedition's license plates and determined that Camberos was not the registered owner. Camberos maintained that he had not been inside the residence and did not know who lived there. Camberos also stated that no one was in the house, but later said that other people were inside.

Upon hearing Camberos's comments, Baughman walked to the passenger side of the Expedition and noticed tools consistent with those that would be used to create a vehicle hide. Baughman looked underneath the Expedition and found a hidden

-3-

compartment in the location where Camberos had been working. Officers later discovered another vehicle hide elsewhere in the Expedition.

Based on their observations and Camberos's conflicting accounts as to whether other people were in the house, the officers decided to secure the residence. Some officers were worried that the home's occupants were engaged in cartel operations, that other residents would soon see the officers, and that the residents would dispose of evidence or present a safety risk. Another officer was concerned that Camberos was committing a burglary and that victims could be located in the house. The officers therefore entered the residence.

As they secured the inside of the residence, officers saw methamphetamine and drug paraphernalia and discovered two people. The officers then applied for a search warrant. While the officers waited for the warrant, Camberos informed police that he was staying at the residence, and that he had purchased the Expedition but registered the vehicle in another person's name. After obtaining a warrant, the officers searched the Expedition and the home. They seized two handguns, over 200 grams of methamphetamine, and $80,000.

Camberos was charged with conspiracy to distribute 500 grams or more of methamphetamine. He moved to suppress evidence seized and statements he made to the police on May 31, 2013. A magistrate judge recommended suppressing the statements but denying the motion to exclude the physical evidence. Camberos made no objections to the report, and the district court adopted it. A jury found Camberos guilty of the conspiracy charge. Because Camberos admitted that he had been convicted previously of two felony drug offenses, the district court at sentencing determined that Camberos was subject to a mandatory life sentence under 21 U.S.C. § 841(b)(1)(A) and imposed sentence accordingly.

Camberos appeals, arguing that the district court erred in denying his motion to suppress physical evidence. Because Camberos failed to object to the magistrate judge's report and recommendation, we review any challenge to the district court's factual findings for plain error, and we review legal conclusions *de novo*. *United States v. Collins*, 321 F.3d 691, 694 (8th Cir. 2003). Camberos also appeals his life sentence.

II.

On the motion to suppress, Camberos argues that the officers violated his Fourth Amendment rights when, without a warrant, they entered the property, looked around and under the Expedition, and entered the home. The district court denied the motion on two alternative grounds. First, the court stated that the officers lawfully entered the curtilage of the home at 5620 East Alameda Avenue pursuant to the "knock-and-talk" exception to the warrant requirement. *See United States v. Weston*, 443 F.3d 661, 667 (8th Cir. 2006). The officers' actions in the curtilage, according to the court, did not exceed the scope of that exception, and they permissibly entered the home without a warrant due to exigent circumstances. Second, the court ruled that even if its first ground was incorrect, it still would deny Camberos's motion, because Camberos had abandoned any legitimate expectation of privacy in the home or the Expedition.

We start with the district court's abandonment ruling and conclude that it is dispositive. To claim the protections of the Fourth Amendment, Camberos must demonstrate that he possessed a legitimate expectation of privacy in the locations searched. *United States v. James*, 534 F.3d 868, 872-73 (8th Cir. 2008). As an overnight guest in the home at 5620 East Alameda Avenue and as the owner and possessor of the Expedition, Camberos typically would have a legitimate expectation of privacy in those areas. *See Minnesota v. Olson*, 495 U.S. 91, 96-97 (1990); *United States v. Anguiano*, 795 F.3d 873, 878 (8th Cir. 2015). When a person voluntarily

abandons his interest in property, however, he relinquishes any expectation of privacy and may not challenge a search of that property based on the Fourth Amendment. *United States v. Caballero-Chavez*, 260 F.3d 863, 866-67 (8th Cir. 2001).

Whether Camberos voluntarily abandoned his interests in the home and Expedition is determined based on the totality of the circumstances. *Id.* We note in particular whether Camberos denied ownership of the property and whether he physically relinquished the property. *Id.*; *United States v. Tugwell*, 125 F.3d 600, 602 (8th Cir. 1997). Abandonment is determined based on the objective facts available to the investigating officers at the time they conducted the challenged search. *United States v. Nowak*, No. 15-2576, 2016 WL 3361475, at *2 (8th Cir. June 17, 2016) (per curiam). It does not depend on the defendant's knowledge or intent. *Id.*

Camberos argues that the district court's finding of abandonment was erroneous because the evidence available to the officers established that he had permission to occupy the residence and to use the Expedition. Camberos asserts that his freedom of movement in and around the home and vehicle created an inference that he was staying at the house, had consent to use the vehicle, and had authority to exclude others from both.

Any inference that Camberos legitimately expected privacy, however, was nullified when Camberos "unequivocally disavowed" any relationship with the home and vehicle. *See United States v. Monie*, 907 F.2d 793, 794-95 (8th Cir. 1990). Camberos told the officers that he was not living at the house, had not been inside, and did not know who lived there. Camberos also denied owning the Expedition, said that he did not know the owner, and offered conflicting accounts as to whether he was working on the vehicle. The officers corroborated Camberos's statements about the vehicle by determining that the Expedition was registered to someone else. Reasonable officers thus could have believed that Camberos had no permission to

occupy the house or use the vehicle, because Camberos said that he did not know the owner of either one.

Camberos contends that he could not have abandoned his interest in the home or Expedition, because he never fled the scene. But a defendant's verbal repudiation of an interest in property can be sufficient to establish a defendant's abandonment of that interest. *See, e.g.*, *Caballero-Chavez*, 260 F.3d at 867; *Monie*, 907 F.2d at 794-95. Based on Camberos's renunciations of an interest in the house or Expedition and the totality of the circumstances, the officers reasonably could conclude at the time of the allegedly unreasonable searches that Camberos did not have a legitimate expectation of privacy in the home or vehicle.

Camberos also claims that the officers unlawfully entered the curtilage of the residence, thereby tainting everything that occurred thereafter. But we need not determine whether the entry was lawful: Even if Camberos's abandonment followed an unlawful entry, his disavowal of any interest in the house and vehicle was a voluntary act of free will that "independently legitimated" the subsequent searches. *United States v. Liu*, 180 F.3d 957, 961 (8th Cir. 1999) (quotation omitted). Camberos was not seized and moved freely about the yard during the conversation in which he disclaimed any interest in the house and vehicle. *See United States v. Washington*, 146 F.3d 536, 537-38 (8th Cir. 1998). The district court thus properly denied the motion to suppress physical evidence.

Camberos's challenge to his life sentence also fails. Camberos had sustained two prior felony drug convictions, and he was convicted in this case for conspiring to traffic at least 500 grams of methamphetamine. There is thus no dispute that he was subject to a mandatory life sentence pursuant to 21 U.S.C. § 841(b)(1)(A). This court has ruled on numerous occasions that the imposition of a mandatory life sentence under that statute does not violate the Eighth Amendment's prohibition on cruel and unusual punishment. *See, e.g.*, *United States v. Scott*, 610 F.3d 1009, 1018 (8th Cir.

2010) (listing cases); *United States v. Whiting*, 528 F.3d 595, 596-97 (8th Cir. 2008) (per curiam) (listing cases).

Camberos acknowledges this precedent, but argues that criticism of mandatory life sentences for "nonviolent" offenders by certain commentators and public officials suggests "an evolving standard of decency" that renders his sentence unconstitutional. *See Kennedy v. Louisiana*, 554 U.S. 407, 419-20 (2008). But Congress has not been convinced to eliminate mandatory life terms for recidivist large-scale drug traffickers, and Camberos has not advanced a convincing case for unconstitutionality based on "objective indicia of society's standards, as expressed in legislative enactments and state practice." *Id.* at 421 (quoting *Roper v. Simmons*, 543 U.S. 551, 563 (2005)). We adhere to the settled law of this circuit.

\*        \*        \*

The judgment of the district court is affirmed.

_____