# United States Court of Appeals
## For the Eighth Circuit

_____

No. 17-1984

_____

United States of America

*Plaintiff - Appellee*

v.

Shawn Russell Sorensen

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of South Dakota - Sioux Falls

_____

Submitted: March 14, 2018
Filed: June 26, 2018

_____

Before GRUENDER, BEAM, and KELLY, Circuit Judges.

_____

BEAM, Circuit Judge.

Shawn Russell Sorensen appeals following his jury trial conviction and sentence, arguing that the district court[1] erred in failing sua sponte to exclude the testimony of the government's fingerprint expert, in determining that the

_____

[1] The Honorable Lawrence L. Piersol, United States District Judge for the District of South Dakota.

government's error in initially misstating Sorensen's predicate offense was clerical and not substantive, and that the court's[2] imposition of life without parole in this case violates Sorensen's rights under the Eighth Amendment. We affirm.

## I.    BACKGROUND

On April 25, 2016, a United States Postal Inspector in Minneapolis applied for and received a search warrant for a postal package sent from a post office in Arizona, addressed to "Gayle Hartz, 404 S. Donaldson, Luvern [sic], Minn. 56156." A certified canine alerted to the odor of narcotics. The return label read "Dave Beckman, 13580 W. Port Royale, Suprise [sic], AZ, 85379." Through the execution of the warrant, the inspector found various items such as clothing, toilet paper, paper towels, 192 grams of cocaine, and over four kilograms of methamphetamine wrapped in bundles of plastic and black electrical tape. The inspector then contacted a counterpart in Sioux Falls, South Dakota, which is very near Luverne, Minnesota, and requested that he conduct a controlled delivery of the package. He did.

Prior to the delivery, an anticipatory search warrant was granted for the residence and Hartz's person. After the controlled delivery to the home in Luverne, officers observed a vehicle drive from the residence. An officer stopped the vehicle and arrested Hartz, the driver, while other officers executed the search warrant at Hartz's home, ultimately locating the unopened, delivered package in a bedroom. When stopped, Hartz told the officers that she received the package on behalf of Shawn Sorensen. Hartz and Sorensen had communicated via text regarding the status of the package prior to its delivery. Just after delivery, Hartz texted Sorensen saying, "Its here. So get ur butt here." Sorensen replied, "I'm on my way."

---

[2]The case was reassigned to the Honorable Karen E. Schreier, United States District Judge for the District of South Dakota following trial.

The Minnesota agents informed members of the Sioux Falls Area Drug Task Force (SFADTF) about Sorensen's involvement. SFADTF began conducting surveillance almost immediately at Sorensen's residence in Sioux Falls. Between the SFADTF and Minnesota law enforcement, officers followed Sorensen from his home to Hartz's residence. Officers immediately arrested Sorensen when he entered Hartz's home. After his arrest, officers found $15,700 cash in Sorensen's pocket. A search warrant executed at Sorensen's residence turned up methamphetamine, drug paraphernalia, and a USPS mailing label for what appeared to be a different package sent to Hartz on September 21, 2015. The label's return address, similar to the intercepted package return address, listed "Dave Beckman" with a Phoenix, Arizona, address. A warrant executed on Sorensen's vehicle turned up, among other items: Sorensen's wallet and driver's license, treasury checks addressed to Sorensen, four cell phones, methamphetamine, marijuana, cocaine, and other drug substances, three firearms, drug paraphernalia, and the USPS package mailing label and printed receipt for the intercepted package.

Inspectors extracted data from two of Sorensen's cell phones. The extraction reports and physical examinations showed that Sorensen had "Gayle" saved as a contact in two of the phones displayed to the jury. He saved Hartz's address under each of the "Gayle" contact listings, misspelling "Luverne" just as the label had ("Luvern"). The only other address in each of the phones was the exact return address, including the misspelling of the city of "Surprise" as was used on the mailing label of the intercepted package as well. The inspection also confirmed the existence of text messages between Hartz and Sorensen regarding the intercepted package. Too, they received proof that Sorensen called the ASK USPS hotline to check on the status of the intercepted package. Additionally, the inspectors discovered USPS records showing packages sent from Arizona to Hartz at addresses in Sioux Falls and Luverne on at least six occasions, and flight records revealing that Sorensen took flights from Sioux Falls to Phoenix on dates corresponding with the delivery of many of the packages.

A jury trial commenced in October 2016. At trial Hartz provided extensive testimony regarding her introduction to, and involvement with, Sorensen. Hartz testified that she met Sorensen in the early to mid-2000's when she and her boyfriend would do methamphetamine with Sorensen and his wife. After losing her job in 2014, Hartz began working for Sorensen, accepting packages in exchange for money and drugs. Hartz testified that she received approximately six packages containing methamphetamine for Sorensen.

A forensic latent print analyst with the United States Postal Inspection Service Forensic Laboratory testified about latent prints found on the adhesive side of the packing tape on the intercepted package. During her examination she identified three prints on the tape that matched Sorensen's known prints. Sorensen did not file any pretrial motions concerning this testimony, nor did he object to her testimony at trial.

In September 2016 (prior to trial), the government filed an information pursuant to 21 U.S.C. § 851(a) notifying Sorensen of its intent to seek increased punishment due to Sorensen's two prior felony drug convictions. These two convictions were listed as: 1) possession of a controlled substance, on or about December 2, 2002, Second Judicial Circuit Court, Minnehaha County, South Dakota; and 2) "transporting or selling dangerous drug" on or about March 10, 2008, Superior Court for Mojave County, Arizona. After the jury found Sorensen guilty, the parties discussed for the first time that there was an error in the description of the Arizona conviction in the § 851(a) information. On April 12, 2017, the government filed an amended information pursuant to § 851(a) that changed the description of Sorensen's prior conviction in Arizona from "transporting or selling" to "possession," and additionally added the specific case number from the Arizona conviction. Sorensen filed a written objection, arguing that given the changes made by the government to the original information, he did not receive "reasonable notice" of its intent to rely upon that particular Arizona conviction and thus it should be stricken from consideration or calculation. At the sentencing hearing, the district court held that the

-4-

government's amended information merely corrected a clerical mistake, as the initial information had the correct county and date of conviction and the amended notice provided the correct description of the offense. The district court sentenced Sorensen to life in prison for conspiracy to distribute a controlled substance in violation of 21 U.S.C. §§ 841(a)(1) and 846 and 120 months for being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g)(1), to run concurrently.

## II.  DISCUSSION

### A.  Expert Testimony

When a defendant has neither objected to an expert witness's testimony nor otherwise challenged her status as an expert, this court reviews for plain error. United States v. Parish, 606 F.3d 480, 490 (8th Cir. 2010). To prevail under this review, Sorensen must show that (1) there was an error, (2) that error was clear or obvious under current law, (3) the error affected Sorensen's substantial rights, and (4) the error seriously affected the fairness, integrity, or public reputation of judicial proceedings. United States v. Braden, 844 F.3d 794, 798 (8th Cir. 2016).

At trial, a forensic latent print analyst with the United States Postal Inspection Service Forensic Laboratory testified about latent prints she found on the underside of the packing tape of the intercepted package delivered to Hartz. Sorensen argues that the fingerprint analyst's testimony did not satisfy the Daubert test and that the district court, sua sponte, should have excluded the expert's testimony. Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579, 593 (1993). We need not analyze whether the admission of this fingerprint expert's testimony was appropriate under the Daubert standard, as Sorensen fails to establish that the alleged erroneous admission of this witness's testimony affected his substantial rights at trial. Sorensen argues that the expert's testimony was misleading and that the jury's conviction in reliance upon this allegedly misleading evidence denied him due process. However, any harm in

-5-

allowing the expert testimony was not so great as to affect Sorensen's substantial rights in light of the additional evidence presented. The testimony of Hartz (whose credibility the jury discerned), the investigative evidence of the shipments from Arizona that corresponded with Sorensen's trips to Arizona, and the extracted data from Sorensen's phones including the identical misspellings of cities in Sorensen's contact list and the shipment labels, as well as myriad other evidence, was more than sufficient to support his conviction. The district court did not plainly err in failing to exclude this testimony.

## B.     Predicate Offenses for Enhancement

A defendant convicted under § 841(a)(1) faces a mandatory life sentence if he has been convicted of two prior "felony drug offenses." 21 U.S.C. § 841(b)(1)(A). A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States *or of a State* or foreign country that prohibits or restricts conduct relating to narcotic drugs." Id. § 802(44) (emphasis added). Prior to trial, the government filed an information pursuant to 21 U.S.C. § 851(a), giving notice that it intended to rely upon two of Sorensen's prior convictions (a South Dakota drug conviction from December 2, 2002, and an Arizona drug conviction from March 10, 2008) to support an enhanced minimum sentence. It was not until after trial that Sorensen pointed out that the information incorrectly listed his 2008 Arizona conviction as one for "transporting or selling" a dangerous drug and failed to include a case number for reference. The government filed an amended information pursuant to 21 U.S.C. § 851(a), listing the Arizona conviction as "[c]onviction for possession of dangerous drugs (methamphetamine) on or about March 10, 2008, in the Superior Court of Mohave County, Arizona (file no. CR-2007-1523)." The district court's decision on felony drug conviction enhancements is reviewed de novo, as it is a matter of statutory interpretation. United States v. Sturdivant, 513 F.3d 795, 803 (8th Cir. 2008).

On appeal, citing Carachuri-Rosendo v. Holder, 560 U.S. 563 (2010) and its progeny, Sorensen claims for the first time that the other prior conviction–the South Dakota conviction–does not qualify as a predicate offense under § 841(b) because it would not qualify as a felony under federal law as there is no record of drug quantity to review. On that basis he argues his state offense was not a "felony drug offense" under 21 U.S.C. § 841(b). We review this claim for plain error. United States v. Thomas, 886 F.3d 1274, 1275 (8th Cir. 2018) ("This court reviews for plain error issues raised for the first time on appeal.").

Sorensen's reliance upon Carachuri-Rosendo is misplaced on these facts. Carachuri-Rosendo considered the definition of aggravated felony and the use of a predicate conviction for immigration purposes. 560 U.S. at 575-82. As germane to the instant facts in the criminal context, this court has explained the relevance of the Court's holding in Carachuri-Rosendo, stating that where a maximum term of imprisonment of more than one year is directly tied to recidivism, an actual recidivist finding–rather than the mere possibility of a recidivist finding for a hypothetical defendant–must be part of a particular defendant's record of conviction in order for that conviction to qualify as a felony under § 841(b). United States v. Haltiwanger, 637 F.3d 881, 883-84 (8th Cir. 2011). So, while Sorensen is correct that Carachuri-Rosendo's reasoning *is* applicable in the criminal context generally, it is not applicable here. There was no issue as to whether Sorensen's South Dakota record of conviction contained a finding of recidivism sufficient to support an enhancement under § 841(b). The focus here is whether the South Dakota conviction satisfies the

definition of "felony drug offense" under § 802(44).[3]  United States v. Samuels, 543 F.3d 1013, 1021 (8th Cir. 2008).

Sorensen's conviction for possession of a controlled substance in South Dakota is one punishable by more than one year in prison–indeed he was sentenced to a term of ten years (with eight years suspended on certain conditions) for his crime. Accordingly, the state conviction meets the statutory requirements as a prior felony drug offense under 21 U.S.C. § 841(b) and the district court did not commit plain error in its analysis. That the Minnehaha County records do not state a drug quantity is not relevant to the instant analysis because we are not concerned about the outcome of the matter if it had been tried in federal court.

As to Sorensen's remaining arguments concerning the timing of the information itself and the amendment made after trial, the information filed pursuant to 21 U.S.C. § 851(a) sufficed in all respects. "To obtain a sentencing enhancement based on a defendant's earlier conviction, the Government must comply with the notice requirements of 21 U.S.C. § 851(a)." United States v. Curiale, 390 F.3d 1075, 1076

---

[3]On the facts of this case, Sorensen is likewise off point in relying upon cases such as United States v. Haltiwanger, 637 F.3d 881 and United States v. Simmons, 649 F.3d 237 (4th Cir. 2011) (en banc), wherein the courts reversed the application of a 21 U.S.C. § 841(b) enhancement after looking at the particular defendant's record of conviction to determine the maximum term of imprisonment. In those cases, the particular defendants had received enhanced sentences based on an analysis of the maximum penalty available for hypothetical recidivists under the relevant state statutes. Haltiwanger, 637 F.3d at 884; Simmons, 649 F.3d at 243. We do not face such circumstances here. Too, United States v. Sanchez, 586 F.3d 918, 929-30 (11th Cir. 2009), also relied upon by Sorensen, is wholly inapposite, as it concerned an analysis of an enhancement under 18 U.S.C. § 3559(c) which, in part, defines the term "serious drug offense" as an offense under state law that, *had the offense been prosecuted in federal court*, would have been punishable under 21 U.S.C. § 841(b)(1)(A). Noted above, we analyze only whether the conviction is a "felony drug offense" under § 802(44).

(8th Cir. 2004) (per curiam). The government before trial must file an information with the court stating in writing the previous convictions to be relied on. 21 U.S.C. § 851(a)(1). "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." Curiale, 390 F.3d at 1076 (quoting 21 U.S.C. § 851(a)(1)). The statute does not define "clerical error." However, this court defines it as an error "where the government's initial information still gave the defendant 'reasonable notice of the Government's intent to rely on a *particular* conviction.'" Sturdivant, 513 F.3d at 804 (quoting Curiale, 390 F.3d at 1076)). The information here was filed prior to trial and, although it listed the Arizona conviction as one of transporting or selling when it was in fact one for possession, the information correctly identified the state and county of conviction, and the exact date of the conviction and thus gave reasonable notice of the government's intent to rely on that particular conviction. Accordingly, the amendment of the information prior to sentencing merely corrected the clerical mistake. Id. (determining that amending a notice after trial but before sentencing to correct the state of a particular conviction was a clerical error and thus not reversible). There was no plain error in the district court's ruling on this matter.

## C.    Life Sentence

Finally, Sorensen argues that his mandatory life sentence without parole violates the Eighth Amendment because it is grossly disproportionate and imposed without regard to his individual characteristics. "We review Eighth Amendment sentencing challenges de novo." United States v. Meeks, 756 F.3d 1115, 1120 (8th Cir. 2014). We first compare Sorensen's crime with this sentence; an Eighth Amendment violation can be found only when this comparison "leads to an inference of gross disproportionality." United States v. Johnson, 944 F.2d 396, 409 (8th Cir. 1991). In only "an extremely rare case" will a noncapital sentence be so disproportionate to the underlying crime that it runs afoul of the Eighth Amendment. Meeks, 756 F.3d at 1120. "This court has ruled on numerous occasions that the

imposition of a mandatory life sentence under [21 U.S.C. § 841(b)] does not violate the Eighth Amendment's prohibition on cruel and unusual punishment." United States v. Camberos-Villapuda, 832 F.3d 948, 953 (8th Cir. 2016) (collecting cases).

Under de novo review, given the gravity of the offense and in light of Sorensen's history of felony convictions, this case does not present the "extremely rare" circumstance where the sentence runs afoul of the Constitution; it is the very situation contemplated by the statutory scheme. United States v. Lee, 625 F.3d 1030, 1037 (8th Cir. 2010). We thus adhere to the settled law of this circuit.

## III. CONCLUSION

For the reasons stated herein, we affirm.

_____